1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

X. Young Lai, #275396
Law Offices of X. Young Lai
111 N. Market Street, Suite 300
San Jose, CA 95113
TEL: (408)228-3995
FAX: (866)610-9505
gagelegal@gmail.com

Attorney for Plaintiff MENGYANG DAI

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

MENGYANG DAI

        Plaintiff

        vs.

3 KINGDOMS, INC.,
a California Corporation; ERDAN LIU,
an individual,

        Defendants.

CASE NO. :
.
**COMPLAINT**
(1)    Failure to Pay Minimum Wages Under FLSA, 29 USC §§ 207, 216;
(2)    Failure to Pay Overtime Compensation Under FLSA, 29 USC §§ 207, 216;
(3)    Unlawful Retention of Tips Under FLSA, 29 USC §§ 203, 216;
(4)    Conversion of Tips under California Law;
(5)    Failure to Pay Overtime Compensation Under Cal. Lab. Code §§1194, 510, 515;
(6)    Failure to Pay Minimum Wage Under Cal. Lab. Code §§ 1182.12, 1194, 1194.2, 1197, Mountain View Minimum Wage Ordinance;
(7)    Failure to Provide Meal and Rest Periods Under Cal Lab. Code, §§ 226.7 and IWC ORDER 5-2001, subd. 12;
(8)    Failure to Furnish Accurate Itemized Wage Statements Under Cal. Lab. Code §226;
(9)    Failure to Timely Pay Wages Due and Owning Upon Termination of Employment Under Cal. Lab. Code, §§ 201,202, 203, 218.5;
(10)    Wrongful Termination in Violation of Public Policy (Tameny Claim);
(11)    Retaliation Under Cal. Lab. Code, § 98.6;
(12)    Whistleblower Retaliation Under Cal. Lab. Code, § 1102.5
(13)    Unfair Competition Under CAL. UCL §§ 17200-17210;
(14)    Private Attorney General Act of 2004;
JURY DEMANDED

## JURISDICTION

1. This Court has federal question jurisdiction over Plaintiff's Fair Labor Standards Act (FLSA) claims pursuant to 28 USC § 1331. The minimum and overtime wages provisions of the FLSA apply to any employee who "is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce." (29 U.S.C. § 207, § 206.)

2. Defendants, as the employer, have an annual gross volume of sales no less than $500, 000, and employees engaged in the production or processing of food, or otherwise working on food or food materials, handling and selling food, beverages, and liquors, that have been moved in or produced for commerce by any person. Plaintiff, as the employee, is engaged in the production or processing of food, or otherwise working on food or food materials for commerce.

3. Plaintiff's state law claims are so closely related to his federal law claims that they form part of the same case or controversy under Article III of the United States Constitution. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

## VENUE

4. Venue is appropriate in this Court under 28 U.S.C. § 1391 because the events giving rise to this complaint occurred in the Santa Clara County of California, the Northern District of California. Plaintiff is and was at all times relevant herein a resident of the Santa Clara County of California, the Northern District of California.

5. The corporate Defendant 3 KINGDOMS, INC. is a corporation incorporated under the laws of California with its principal place of the restaurant business located at 134 Castro Street, City of Mountain View, the Santa Clara County of California, the Northern District of California.

6. A substantial part of the events or omissions giving rise to the claims occurred in the Santa Clara County of California, the Northern District of California. At all times relevant herein, Defendants employed Plaintiffs at its Santa Clara County location and conducted regular, substantial, and sustained business activity in the Santa Clara County of California, the Northern District of California.

## PARTIES

7. Plaintiff MENGYANG DAI ("DAI") is an individual and resident of the County of Santa

Clara, the State of California. At all times relevant to this action, until her termination in July 2023, she was employed with Defendants as a restaurant worker.

8.   Defendant 3 KINGDOMS, INC., at all times relevant to this action, until its dissolution on July 13, 2023, was a California Corporation with its principal place of business located in the City of Mountain View, the County of Santa Clara, the State of California.

9.   Defendant Erdan Liu ("LIU") is an individual and resident of the County of Santa Clara, the State of California. She has been running a restaurant called 3 Kingdoms Hot Pot located in the City of Mountain View, the County of Santa Clara, the State of California, since 2018, with or without the corporate defendant 3 KINGDOMS, INC.

## **ALTER EGO ALLEGATION**

10. At all times herein relevant, defendants, and each of them, was an owner, a co-owner, an agent, representative, partner, and/or alter ego of its co-defendants, or otherwise acting on behalf of each and every remaining defendant and, in doing the things hereinafter alleged, were acting within the course and scope of their authorities as an owner, a co-owner, an agent, representative, partner, and/or alter ego of its co-defendants, with the full knowledge, permission, and consent of each and every remaining defendant, each co-defendant having ratified the acts of the other co-defendants.

11. Plaintiff is informed and believes, and thereon alleges that each of the defendants named herein as Does 1 through 10, inclusive, were and are in some manner responsible for the actions, acts and omissions herein alleged, and for the damages caused by the defendants, and are, therefore, jointly and severally liable for the damages caused to Plaintiff.

12. Plaintiff is informed and believes, and thereon alleges that each of the defendants including Does 1 through 10, inclusive, were, at all times herein relevant, acting in concert with, and in conspiracy with, each and every one of the remaining defendants.

13. Wherever appearing in this Complaint, each and every reference to defendants or to any of them, is intended to be and shall be a reference to all defendants herein, and to each of them, named and unnamed, including all fictitiously named defendants, unless said reference is otherwise specifically qualified.

14. Plaintiff is informed and believes, and thereon alleges that each of the defendants, including

all fictitiously named defendants (hereinafter collectively referred to as "Defendant Shareholders") are, and at all times herein relevant were, shareholders of the stock and/or promoters of 3 KINGDOMS, INC. and/or subscribers to stock therein.  There exists, and at all times herein relevant existed, a unity of interest between Defendant Shareholders and 3 KINGDOMS, INC. such that any individuality and separateness between the Defendant Shareholders and 3 KINGDOMS, INC. has ceased, and 3 KINGDOMS, INC. is the alter ego of Defendant Shareholders as follows:

a.   Plaintiff alleges that 3 KINGDOMS, INC.is, and all times herein relevant was, a mere shell and sham without capital, assets, stock, or stockholders.  3 KINGDOMS, INC. was conceived, intended, and used by Defendant Shareholders as a device to avoid individual liability and for the purpose of substituting a financially insolvent corporation in the place of Defendant Shareholders. At no time after 3 KINGDOMS, INC. became incorporated was any stock authorized to be issued or issued nor has any permit for issuance of stock applied for with the Commissioner of Corporations.

b.   Plaintiff alleges that 3 KINGDOMS, INC.is, and at all times herein relevant was, so inadequately capitalized that, compared with the business to be done by 3 KINGDOMS, INC. and the risks of loss attendant therein, their capitalization was illusory or trifling.

c.   Plaintiff alleges that 3 KINGDOMS, INC.is, and at all times herein relevant was, the alter egos of Defendant Shareholders and there exists, and at all times herein relevant has existed, a unity of ownership between Defendant Shareholders and  3 KINGDOMS, INC. such that any separateness has ceased to exist in that Defendant Shareholders used assets of 3 KINGDOMS, INC. for personal use, caused assets of 3 KINGDOMS, INC.to be transferred to them without adequate consideration, and withdrew funds from ASIAN PEARL FREMONT, INC.'s bank accounts for their personal use.

d.   Plaintiff alleges that 3 KINGDOMS, INC.is, and at all times relevant herein, was, a mere shell, instrumentality, and conduit through which Defendant Shareholders carried on their business in the name of 3 KINGDOMS, INC. exactly as they conducted it previous to incorporation exercising complete control and dominance of such business to such an extent that any individuality or separateness of 3 KINGDOMS, INC. and Defendant Shareholders does not now, and at any time

herein relevant did not, exist.

e.   Plaintiff alleges that 3 KINGDOMS, INC.is, and at all times herein relevant was, controlled, dominated, and operated by Defendant Shareholders as their individual business and alter ego, in that the activities and business of 3 KINGDOMS, INC. was carried out without the holding of Directors or Shareholders meetings, no records or minutes of any corporate proceedings were maintained, and Defendant Shareholders entered into personal transactions with ASIAN PEARL FREMONT, INC., without the approval of other directors or shareholders.

f.   Plaintiff alleges that adherence to the fiction of separate existence of 3 KINGDOMS, INC.as an entity distinct from Defendant Shareholders would permit abuse of the corporate privilege and would sanction fraud in that Defendant Shareholders caused funds to be withdrawn from 3 KINGDOMS, INC. and distributed said funds without any consideration to ASIAN PEARL FREMONT, INC., all for the purpose of avoiding and preventing attachment and execution by creditors, including Plaintiff, thereby render 3 KINGDOMS, INC. insolvent and unable to meet its obligations.

g.   Plaintiff alleges that adherence to the fiction of the separate existence of 3 KINGDOMS, INC.as an entity distinct from Defendant Shareholders would permit abuse of the corporate privilege and produce an inequitable result in that Defendant Shareholders represented to Plaintiff that said shareholders would be responsible for corporate obligations and the transaction complained of herein was entered into under the belief that Defendant Shareholders were, in reality, the true parties obligated.

h.   Plaintiff alleges that adherence to the fiction of the separate existence of 3 KINGDOMS, INC.as an entity distinct from Defendant Shareholders would permit abuse of the corporate privilege and produce an inequitable result in that Defendant Shareholders guaranteed certain of ASIAN PEARL FREMONT, INC.'s obligations, thereby enabling 3 KINGDOMS, INC.to return to active business, without adequate financing and without capital stock, and to invite the public generally, and Plaintiff, in particular, to deal with 3 KINGDOMS, INC.to Plaintiff's loss as herein pleaded.

15. As a result of the acts, and omissions complained of hereinabove, said Defendant Shareholders

are jointly and severally liable, for all relief sought herein against 3 KINGDOMS, INC.by Plaintiff.

**PERSONAL LIABILITY**

16. The Corporate Defendant 3 KINGDOMS, INC. has been running a restaurant business called 3 Kingdoms Hot Pot since 2018 until July 13, 2023, when Defendant LIU filed a certification of dissolution with the California Secretary of State. However, after the dissolution, Defendant LIU still used 3 KINGDOMS, INC to run the restaurant, including having the employee's paychecks and business expenses paid from the corporate accounts. Defendant LIU did not inform Plaintiff or other employees that 3 KINGDOMS, INC was dissolved.

17. Under FLSA, the definition of "employer" includes "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). Thus, personal liability attaches to corporate officers, managers, and supervisors acting in the interest of an employer.

18. The term "to employ" means: "(a) to exercise control over the wages, hours or working conditions, *or* (b) to suffer or permit to work, *or* (c) to engage, thereby creating a common-law employment relationship." (*Martinez v. Combs* (2010) 49 Cal. 4th 35, 64.) Employer "means any person… who directly or indirectly, or through an agent or any other person, employs or exercises control over the wages, hours, or working conditions of any person." (IWC Order No.5-2001; Martinez, 49 Cal. 4th at 63.)

19. Further, Labor Code section 558.1 provides "(a) Any employer or other person acting on behalf of an employer, who violates, or causes to be violated, any provision regulating minimum wages or hours and days of work in any order of the Industrial Welfare Commission, or violates, or causes to be violated, Sections 203, 226, 226.7, 1193.6, 1194, or 2802, may be held liable as the employer for such violation (b) For purposes of this section, the term other person acting on behalf of an employer is limited to a natural person who is an owner, director, officer, or managing agent of the employer…"

20. Each individual defendant is an owner, director, officer, or managing agent of the corporate defendant 3 KINGDOMS, INC. acting in the interest of 3 KINGDOMS, INC.  Individual defendants exercised control over Plaintiffs' wages, hours, and working conditions. They employed and terminated Plaintiff. They managed Plaintiff's performance. They determined Plaintiff's work hours and assigned work duties to Plaintiff and Plaintiff reported to them. They determined Plaintiff's compensation. They took retaliatory action against Plaintiff.

**FACTUAL ALLEGATIONS APPLICABLE TO ALL CLAIMS**

21. From approximately June 2021 through July 2023, Plaintiff Dai worked for Defendants as a non-exempt worker.  In 2020, Defendants paid DAI the city minimum wages and failed to pay her 9.5 hours' work time.  Defendants paid DAI wages in cash without furnishing her itemized wage statements. Defendants did not distribute tips to DAI.

22. In 2021, 2022, and 2023, DAI worked as a waitress.

23. Dai generally worked five (5) days a week from Wednesday through Sunday.  On Wednesdays and Thursdays, her job started from 11:00 a.m. to 11:30 p.m. or 12:00 a.m. and she took a two-hour shift break either from 2:30 p.m. to 4:30 p.m. or 3:30 p.m. to 5:30 p.m.

24. On Fridays, Saturdays, and Sundays, she worked from 11:00 a.m. to 5:00 p.m. or 2:00 p.m. to 11:30 p.m.

25. DAI also worked on some Mondays and Tuesdays to substitute for other employees.

**COUNT 1-FAILURE TO PAY MINIMUM COMPENSATION UNDER FLSA**

26. Pursuant to 29 USC § 206, every employer shall pay each of his employees wages at least $7.25 an hour.

27. Defendants failed to pay DAI 9.5 hours of work time in 2021, thus violating said statute.

28. Pursuant to 29 USC § 206, DAI is entitled to minimum wages for the hours worked for which she has not been compensated, in an amount to be determined at trial.

29. Pursuant to 29 USC § 216(b), DAI is also entitled to an equal amount as liquidated damages in addition to reasonable attorney fees and costs, each in an amount to be determined at trial.

**COUNT 2-FAILURE TO PAY OVERTIME COMPENSATION UNDER FLSA**

30. Plaintiff re-alleges and incorporates by reference the allegations in each and every paragraph hereinabove, as though fully set forth hereto.

31. Pursuant to 29 USC § 207, "no employer shall employ any of his employees…, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."

32. The "regular rate" is defined as "a rate per hour," computed by dividing his total remuneration

for employment (except statutory exclusions) in any workweek by the total number of hours actually worked by him in that workweek with the maximum of 40 hours. (29 C.F.R. § 778.109.)

33. A monthly salary is translated into a weekly salary by multiplying the monthly salary by twelve (months) and dividing the result by fifty-two (weeks) and then dividing by the number of regular hours in a week. (29 C.F.R. § 778.113.)

34. In 2022 and 2023, DAI worked as a waitress. However, Defendants designated her as a manager. Although DAI had no authority to fire or hire employees or make recommendations for recruiting or promotion, she was not able to regularly exercise independent judgment and discretion, and her primary duty was serving customers, which made up 90% of her daily duties, Defendants misclassified DAI as an exempt employee and paid her a fixed monthly salary of $5,000 without compensating her overtime.

35. Defendants paid DAI with a fixed monthly salary. However, Defendants willfully failed to compensate DAI at a rate not less than one and one-half times the regular rate of pay for hours worked in excess of 40 hours per week.

36. Pursuant to 29 USC § 207, DAI is entitled to overtime compensation for the overtime hours worked for which she has not been compensated, in an amount to be determined at trial. Pursuant to 29 USC § 216(b), DAI is also entitled to an equal amount as liquidated damages in addition to reasonable attorney fees and costs, each in an amount to be determined at trial.

**COUNT 3-UNLAWFUL RETENTION OF TIPS UNDER FLSA**

37. Plaintiff re-alleges and incorporates by reference the allegations in each and every paragraph hereinabove, as though fully set forth hereto.

38. Under 29 U.S. Code § 203 (m)(2) (B), employers are prohibited from keeping tips received by their employees, regardless of whether the employer takes a tip credit.

39. Defendants required the waitstaff to contribute to a tip pool, and arbitrarily designed a numerical system to distribute tips. Defendants first allocate 3% of the tips to the corporation (for credit card payment processing fees as claimed by Defendants.) Then among the rest 97%, Defendant allocated 4% to the ushers, including LIU who considered her as such while overseeing the restaurant's operation, 20% to the kitchen staff, and 76% to the waitstaff (bussers would normally receive 50% of the tips that

waiters and waitress do).

40. Defendants violated the statute by retaining part of the tips, including the 3% credit card processing fees and the tips taken by LIU.

41. Under 29 U.S. Code § 216, DAI is entitled to damages in the amount of all tips unlawfully kept by Defendants, and in an additional equal amount as liquidated damages. DAI is also entitled to reasonable attorney's fees and costs.

### COUNT 4- CONVERSION OF TIPS UNDER CALIFORNIA LAW

42. Plaintiff re-alleges and incorporates by reference the allegations in each and every paragraph hereinabove, as though fully set forth hereto.

43. Pursuant to California Labor Code section 351, every gratuity paid, given or left for an employee by a patron is the sole property of the employee or employees to whom it was paid, given, or left for, and therefore an employer or its agents are not permitted to share in any tips left for employees or make deductions from an employee's wages because of those tips.

44. Pursuant to California Labor Code section 351, an employer who permits patrons to pay gratuities by credit card must pay employees the full amount of the gratuity that the patron indicated on the credit card slip, without any deductions for credit card payment processing fees or costs that may be charged to the employer by the credit card company. Moreover, such gratuities must be paid to employees no later than the next regular payday following the date the patron authorized the credit card payment.

45. California Labor Code section 351 prohibits employers and agents from receiving any gratuity paid to an employee by a patron, and California Labor Code section 350, subdivision (a) and (d) defined "employer" and "agent" to include "every person other than the employer having the authority to hire or discharge any employee or supervise, direct, or control the acts of employees."

46. Defendants required the waitstaff to contribute to a tip pool, and arbitrarily designed a numerical system to distribute tips. Defendants first allocate 3% of the tips to the corporation (for credit card payment processing fees as claimed by Defendants.) Then among the rest 97%, Defendant allocated 4% to the ushers, including LIU who considered her as such while overseeing the restaurant's operation, 20% to the kitchen staff, and 76% to the waitstaff (bussers would normally receive 50% of the tips that waiters and waitress do).

---

COMPLAINT

47. Defendants determined the numeric rate of the tips. DAI and all other employees did not have decision-making power in the distribution system designed by Defendants.

48. The tips were DAI's property, and Defendants wrongfully took part of the tips, including the 3% credit card processing fees and the tips taken by LIU, without DAI's consent, and caused economic damages to DAI.

49. Moreover, Defendants' tip pool was arbitrary and bore no relationship to the services. Thus, the tip pooling arrangement was not a fair and reasonable distribution of the tips as required by law.

50. At all times relevant hereto, Defendants consciously disregarded DAI's property right under the clear statutory mandate, willfully took possession of a portion of the DAI's gratuities, and converted it into their own property without DAI's consent. DAI was thereby harmed by Defendants' conversion.

51. Thus, Defendants acted with malice, and their actions were continuous, knowing, and willful. Furthermore, the corporate defendant has authorized or ratified the illegal tip pool, which was designed and/or approved by its officers, directors, or managing agents.

52. Wherefore, DAI demands restitution of the gratuities wrongfully converted by Defendants in a sum to be proven at trial with an interest thereon, and punitive damages.

**COUNT 5-FAILURE TO PAY OVERTIME COMPENSATION UNDER CAL. LAB. CODES**

53. Plaintiff re-alleges and incorporates by reference the allegations in each and every paragraph hereinabove, as though fully set forth hereto.

54. Pursuant to California Labor Code section 510 and Industrial Welfare Commission ("thereafter "IWC") Order 5-2001, Defendants were required to pay non-exempt employees for any work in excess of eight (8) hours in one workday and in excess of forty (40) hours in any one workweek at the rate of no less than one and one-half (1-1/2) times their regular rate of pay, and any work in excess of twelve (12) hours in one day and any in excess of eight (8) hours on the seventh day of a workweek at the rate of no less than twice their regular rate of pay.

55. California Labor Code section 515, subdivision (d) (1) provides: "[f]or the purpose of computing the overtime rate of compensation required to be paid to a nonexempt full-time salaried employee, the employee's regular hourly rate shall be1/40th of the employee's weekly salary."

56. California Labor Code section 515, subdivision (d) (2) provides: "[p]ayment of a fixed salary

to a nonexempt employee shall be deemed to provide compensation only for the employee's regular, nonovertime hours, notwithstanding any private agreement to the contrary."

57. In 2022 and 2023, DAI worked as a waitress. Defendants designated DAI as a manager. However, she had no authority to fire or hire employees or make recommendations for recruiting or promotion, she was not able to regularly exercise independent judgment and discretion, and her primary duty was serving customers, which made up 90% of her daily duties, and her monthly salary was below two times the full-time state minimum wage. (Cal. Code Regs., tit. 8, § 11050, subd.1(A)(1).) Defendants misclassified DAI as an exempt employee, and paid her a fixed monthly salary of $5,000 without compensating her overtime.

58. Defendants paid DAI with a fixed monthly salary. However, Defendants willfully failed to compensate DAI at a rate not less than one and one-half times the regular rate of pay for hours worked in excess of 40 hours per week.

59. Pursuant to Cal. Lab. Code §1194, DAI is entitled to the unpaid balance of the full amount of this overtime compensation, including interest thereon, reasonable attorney's fees, and costs of suit.

### COUNT 6- FAILURE TO PAY MINIMUM WAGE UNDER CAL. LAB. CODES

60. Plaintiff re-alleges and incorporates by reference the allegations in each and every paragraph hereinabove, as though fully set forth hereto.

61. Pursuant to the California Minimum Wage Order (MW-2007) and California Labor Code section 1182.12, for any employer who employs 25 or fewer employees, the state minimum wage was: (a) from January 1, 2022, through December 31, 2022, $14 per hour; (b) from January 1, 2023, to December 31, 2023, $15.50 per hour. The City of Mountain View Minimum Wage Ordinance provides the city minimum wages: $18.15 in 2023, $17.10 in 2022, $16.30 in 2021 and $16.05 in 2020.

62. The payment of a lesser amount than the minimum wage is unlawful under California Labor Code section 1197.

63. Every employer shall pay each employee minimum wages for "all hours worked." (Cal. Code Regs., tit. 8, § 11050, subd. 4(A).) Under California Labor Code section 515, subdivision (d) (2), when an employee works overtime and is not paid anything for that overtime (such as a non-exempt employee being paid a salary), that is a failure to pay the minimum wage for all hours worked. Thus, the DAI and

the cooks were not compensated at all for the overtime hours.

64. In addition, Defendants failed to pay DAI for 9.5 hours she worked in 2020.

65. Pursuant to California Labor Code section 1194, DAI is entitled to the unpaid balance of the full amount of this minimum wage, including interest thereon, reasonable attorney's fees, and costs of suit.

66. Pursuant to California Labor Code section 1194.2, DAI is also entitled to recover liquidated damages in an amount equal to the wages unlawfully unpaid and interest thereon.

## COUNT 7-FAILURE TO PROVIDE REST AND MEAL PERIODS UNDER CAL. LAB. CODE AND IWC ORDER

67. Plaintiff re-alleges and incorporates by reference the allegations in each and every paragraph hereinabove, as though fully set forth hereto.

68. Pursuant to California Labor Code section §§ 226.7 and IWC order 5-2001, rest periods must be authorized and permitted at the rate of ten (10) minutes for every four (4) hours, and meal periods must be authorized and permitted at the rate of thirty (30) minutes for every five (5) hours. Employers must pay nonexempt employees an hour of pay at their regular rate for each workday that a rest period and for each workday that a meal break is not provided.

69. DAI worked at least nine (9) or 10 hours per day, and the evening shift lasted more than five (5) hours. Defendants failed to authorize and permit DAI to have rest periods of 10 minutes when she worked over four (4) hours and meal periods of 30 minutes when she worked five (5) hours, as she was required to remain on the premises and be on duty at all times, ready to serve patrons who frequently arrived at varied odd hours.

70. DAI is thus entitled to one (1) hour of pay for each rest break violation per workday and one (1) hour of pay for each meal break violation per workday.

## COUNT 8-FAILURE TO FURNISH ACCURATE ITEMIZED WAGE STATEMENTS UNDER CAL. LAB. CODE

71. Plaintiff re-alleges and incorporates by reference the allegations in each and every paragraph hereinabove, as though fully set forth hereto.

72. Pursuant to California Labor Code section 226, every employer shall, semimonthly or at the

time of each payment of wages, furnish an employee with an accurate itemized statement in writing.

73. Because Defendants misclassified DAI as exempt, they did not report her regularly hourly rate, total hours worked, or overtime compensations. Defendants did not report cash tips. Thus, Defendants knowingly and intentionally failed to report accurately the "gross wages earned," "net wages earned," "all deductions," total hours worked," and "all applicable hourly rate" within the meaning of subdivision (a) of Cal. Lab. Code § 226.

74. Pursuant to Cal. Lab. Code § 226 (e) (1), Plaintiff is entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial violation and one hundred dollars ($100) for a subsequent violation, up to an aggregated penalty of four thousand dollars ($4,000), and reasonable attorney's fees and costs.

**COUNT 9-FAILURE TO TIMELY PAY WAGES DUE AND OWING UPON**

75. Plaintiff re-alleges and incorporates by reference the allegations in each and every paragraph hereinabove, as though fully set forth hereto.

76. Pursuant to California Labor Code section 201, the wages earned and unpaid at the time of discharge are due and payable immediately.  Pursuant to California Labor Code section § 202, the wages earned and unpaid at the time of resignation are due and payable not later than 72 hours thereafter.

77. Defendants violated the provisions when they willfully failed to pay DAI the minimum wages, overtime compensations, and meal and rest break premiums, upon the termination of her employment.

78. Pursuant to California Labor Code section 203, DAI is entitled to 30 days' wages as a penalty.

79. Pursuant to California Labor Code section 218.5, DAI is entitled to reasonable attorney's fees and costs.

**COUNT 10- WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY**
**(TAMENY CLAIM)**

80. Plaintiff re-alleges and incorporates by reference the allegations in each and every paragraph hereinabove, as though fully set forth hereto.

81. Beginning July 16, 2023, DAI was on maternity leave, during which period she discussed with LIU the issue of compensation for the time she worked on Mondays and Tuesdays (to substitute for other employees.) LIU only agreed to use the time to make up for her sick and personal leave and refused to

compensate her.

82. Then on August 7, 2023, LIU sent Dai a letter accusing her of among other things, "falsely reporting employee numbers, fabricating work hours, and misappropriating wages and other benefits," and demanding she return $131, 092.41 in wages and tips that you claimed that wrongfully taken by using false identities. LIU threatened her that "[r]elevant authorities will thoroughly investigate and impose severe penalties," and "[i]dentity theft and abuse are serious crimes in California, with a minimum sentence of 2 years in prison upon conviction." LIU knew the allegations were false, and the letter constituted extortion. (See *Flatley v. Mauro* (2006), 39 Cal. 4th 299, 303.)

83. Furthermore, on November 17, 2023, after receiving a PAGA notice, LIU contacted a third party and had him convey a message to DAI threatening if she did not withdraw the complaint, LIU would throw her in jail. As a result, LIU effectively terminated her job.

84. Alternatively, LIU's actions intentionally created working conditions (such as paying Defendants $131, 092.41 she did not owe, withdrawing the PAGA notice, and constantly subjecting herself to LIU's threats) so intolerable that a reasonable person in DAI's position would have had no reasonable alternative except to resign, and DAI resigned because of these working conditions.

85. Or, Defendants otherwise suspended or laid off DAI without pay.

86. Defendants took the adverse employment actions against DAI because she asserted her right to fair compensation under the law, opposed Defendants' unlawful employment practice, and made a charge, assisted, or participated in a PAGA investigation or proceeding.

87. As the legal result of Defendants' conduct, DAI has suffered losses of wages, salary, benefits, and additional amounts of money that DAI would have received if Defendants had not retaliated against her. As a result of such retaliation and consequent harm, DAI has suffered damages in an amount according to proof.

88. Defendants terminated DAI's employment because she engaged in the protected activity. The above-cited conduct of Defendants was done with malice, fraud, and oppression, and in reckless disregard for DAI rights under applicable wage laws. As a result, DAI suffered embarrassment, mental and emotional distress, and humiliation.

89. DAI is thus entitled to recover punitive damages in an amount according to proof.

**COUNT 11-RETALIATION IN VIOLATION OF CALIFORNIA LABOR CODE SECTION 98.6**

90. Plaintiff re-alleges and incorporates by reference the allegations in each and every paragraph hereinabove, as though fully set forth hereto.

91. Labor Code section 98.6 provides that "a person shall not discharge an employee or in any manner discriminate, retaliate, or take any adverse actions against any employee ... because the employee… made a written or oral complaint that he or she is owed unpaid wages, or because the employee has initiated any action or notice pursuant to Section 2699."

92. As stated before, Defendants took the adverse employment action against DAI because she asserted her right to fair compensation under the law, opposed Defendants' unlawful employment practice, and because she initiated an action and served a notice on Defendants pursuant to California Labor Code section 2699.

93. As the legal result of Defendants' conduct, DAI has suffered losses of wages, salary, benefits, and additional amounts of money that Plaintiff would have received if Defendants had not retaliated against her. As a result of such retaliation and consequent harm, DAI has suffered damages in an amount according to proof.

94. Defendants terminated DAI's employment because she engaged in the protected activity. The above-cited conduct of Defendants was done with malice, fraud, and oppression, and in reckless disregard for DAI rights under applicable wage laws. As a result, DAI suffered embarrassment, mental and emotional distress, and humiliation.

95. DAI is thus entitled to recover punitive damages in an amount according to proof.

**COUNT 12-WHISTLEBLOWER RETALIATION IN VIOLATION OF CALIFORNIA LABOR CODE SECTION 1102.5**

96. Plaintiff re-alleges and incorporates by reference the allegations in each and every paragraph hereinabove, as though fully set forth hereto.

97. Labor Code section 1102.5(b) provides that "an employer, or any person acting on behalf of the employer, shall not retaliate against an employee for disclosing information .. . to a government or law enforcement agency, if the employee has reasonable cause to believe that the information discloses a violation of state or federal statutes, or a violation of or noncompliance with a local, state, or federal rule

or regulation."

98. As stated before, Defendants took the adverse employment action against DAI because in part, she initiated an action and served a notice on Defendants pursuant to California Labor Code section 2699.

99. As the legal result of Defendants' conduct, Plaintiff has suffered losses of wages, salary, benefits, and additional amounts of money that Plaintiff would have received if Defendants had not retaliated against her. As a result of such retaliation and consequent harm, Plaintiff has suffered damages in an amount according to proof.

100. Defendants terminated DAI's employment because she engaged in the protected activity. The above-cited conduct of Defendants was done with malice, fraud, and oppression, and in reckless disregard for DAI rights under applicable wage laws. As a result, DAI suffered embarrassment, mental and emotional distress, and humiliation.

101. DAI is thus entitled to recover punitive damages in an amount according to proof.

**COUNT 13 -UNFAIR COMPETITION UNDER CAL. UCL §§ 17200-17210**

102. Plaintiff re-alleges and incorporates by reference the allegations in each and every paragraph hereinabove, as though fully set forth herein.

103. California Business & Professional Code sections 17200-17210 (California's Unfair Competition Law ("UCL")) prohibit unlawful, unfair, or fraudulent business acts or practices.

104. Defendants have committed, and upon information and belief continue to commit, on-going unlawful, unfair, or fraudulent business practices within the meaning of the UCL, including, but not limited to:

a.     Failure to pay minimum and overtime compensation under California law;

b.     Failure to provide accurate and itemized wage statements required by under California law;

c.     Failure to pay shift break premiums;

d.     Failure to provide rest and meal breaks;

e.     Failure to pay wages due upon termination;

f.     Unlawful conversion of tips.

105. The unlawful, unfair or fraudulent business practice described above has proximately

caused damages to Plaintiff and to the general public. California Business & Professional Code Section 17203 authorizes a court to fashion remedies necessary to prevent the use or employment by any person of any practice that constitutes unfair competition, or necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition.

106.    Pursuant to the UCL, Plaintiff is entitled to restitution of unpaid minimum and overtime compensation, rest and meal premiums, and converted tips.

107.    Pursuant to the UCL, Plaintiff is entitled to injunctive relief against Defendants' ongoing continuation of such ongoing unlawful, unfair, or fraudulent business practices.

### COUNT 14 –ACTIONS UNDER THE CALIFORNIA PRIVATE ATTORNEY GENERAL ACT OF 2004

108.    Plaintiff re-alleges and incorporates by reference the allegations in each and every paragraph hereinabove, as though fully set forth hereto.

109.    On November 15, 2023, pursuant to California Labor Code section 2699.3, Counsel for Plaintiffs served a notice on California Labor and Workforce Development Agency ("LWDA") and Defendants.  Plaintiff, by virtue of the attached Exhibit "A," has satisfied all prerequisites to serve as a representative of the general public to enforce California's labor laws, including, without limitation, the penalty under California Labor Code section 2699.3 (a) (2) (C).

110.    No notice of investigation has been received from the LWDA in the statutorily proscribed 65-day period since the mailing of the notice of the action and as a result, Plaintiff, as a representative of the people of the State of California, seeks any and all penalties otherwise capable of being collected by the LWDA and/or the Department of Labor Standards Enforcement ("DLSE").

111.    Pursuant to California Labor Code section 2699, the aggrieved employees are entitled to be awarded twenty-five percent (25%) of all penalties due under California law, in addition to interest, attorneys' fees, and costs. The Court should award seventy-five (75%) percent of the penalties due under California law to the State of California.

112.    The specific code violations and civil penalties are listed as follows:

a. <u>FAILURE TO PROVIDE REST AND MEAL PERIODS</u>

113.    Rest periods are breaks taken at "the rate of ten (10) minutes net rest time per four (4) hours"

worked and must be "be counted as hours worked for which there shall be no deduction from wages." (Cal. Code Regs., tit. 8, § 11050, subd. 12.)

114. A "bona fide meal period" is a break that lasts at least 30 minutes, but no longer than 60 minutes, during which "the employee is relieved of all duty." (See Cal. Code Regs., tit. 8, § 11050, subd. 11; Div. of Labor Standards Enf't, Opinion Letter on Hours Worked: Split Shift (Dec.11, 2002).)

115. Pursuant to California Labor Code section §§ 226.7 and IWC order 5-2001, rest periods must be authorized and permitted at the rate of ten (10) minutes for every four (4) hours, and employers must pay nonexempt employees an hour of pay at their regular rate for each workday that a rest period is not provided; meal periods must be authorized and permitted at the rate of thirty (30) minutes for every five (5) hours, and employers must pay nonexempt employees an hour of pay at their regular rate for each workday that a rest period is not provided.

116. The employees' work started at 11:00 a.m. and normally ended around 11:30 p.m., with a two-hour hour shift break taking place around 2:30 p.m.-4:30 p.m. or 2:00 p.m.-4:00 p.m. The employees worked at least nine and a half (9.5) hours per day, and the evening shift lasted more than five (5) hours. Defendants failed to authorize and permit the employees to have rest periods of 10 minutes when the employees worked over four (4) hours and meal periods of 30 minutes when the employees worked five (5) hours, as they were required to remain on the premises and be on duty at all times, ready to serve patrons who frequently arrived at varied odd hours.

117. There is a civil penalty of $50 for each aggrieved employee per day period for each initial violation and $100 for each subsequent violation of IWC ORDER 5-2001, subd. 11 and 12 for failure to provide rest and meal breaks, pursuant to California Labor Code section 558.

b. FAILURE TO PAY SPLIT SHIFT PREMIUM

118. Wage Order No. 5 defines a "split shift" as "a work schedule" that "is interrupted by non-paid non-working periods established by the employer, other than bona fide rest or meal breaks." (Cal. Code Regs., tit. 8, § 11050, subd. 2(R).) "When an employee works a split shift, one hour's pay at the minimum wage shall be paid in addition to the minimum wage for that workday, …." (Cal. Code Regs., tit. 8, § 11050, subd. 4(C).)

119. The interval period was not a "bona fide rest period," which by definition, was paid. In

addition, because the interval period was longer than 60 minutes, it was not a "bona fide meal period."

120.    Full-time employees work both lunch and dinner shifts with a two-hour hour shift break taking place around 2:30 p.m.-4:30 p.m. or 2:00 p.m.-4:00 p.m. Defendants failed to compensate the employees (except for those compensated with a fixed monthly salaries) with one hour's pay at the minimum wage.

121.    There is a civil penalty of $50 for each aggrieved employee per day period for each initial violation and $100 for each subsequent violation of IWC ORDER 5-2001, subd. 4(C) for failure to pay split shift premiums, pursuant to Cal. Lab. Code § 558.

c. <u>FAILURE TO PAY OVERTIME COMPENSATION</u>

122.    Pursuant to California Labor Code section 510 and Industrial Welfare Commission ("thereafter "IWC") Order 5-2001 (Cal. Code Regs., tit. 8, § 11050, subd. 3), Defendants were required to pay Plaintiff for any work in excess of eight (8) hours in one workday and in excess of forty (40) hours in any one workweek at the rate of no less than one and one-half (1-1/2) times their regular rate of pay, and any work in excess of twelve (12) hours in one day and any work in excess of eight (8) hours on the seventh day of a workweek at the rate of no less than twice their regular rate of pay.

123.    California Labor Code section 515, subdivision (d) (1) provides: "[f]or the purpose of computing the overtime rate of compensation required to be paid to a nonexempt full-time salaried employee, the employee's regular hourly rate shall be1/40th of the employee's weekly salary."

124.    California Labor Code section 515, subdivision (d) (2) provides: "[p]ayment of a fixed salary to a nonexempt employee shall be deemed to provide compensation only for the employee's regular, nonovertime hours, notwithstanding any private agreement to the contrary."

125.    At all times relevant herein, full-time employees worked overtime. For example, DAI worked at least nine and a half (9.5) hours a day, 5 days a week. The cooks worked at least nine and a half (9.5) hours a day, five and a half (5.5) days a week.

126.    Defendants paid fixed salaries to DAI and the cooks without compensating them for their overtime work hours. In addition, Defendants misclassified certain employees, such as DAI, as exempt.

127.    Furthermore, Defendants permit, authorize, ratify, or even encourage the employees to use two social security numbers to fraudulently report wages so that Defendants evaded paying the employees

overtime compensation and paying evaded paying part of Defendants' federal and state taxes. As a result, Defendants generally underpaid the employees for their overtime work.

128.    There is a civil penalty of $100 for each aggrieved employee per pay period for the initial violation and $200 for each subsequent violation of California Labor Code sections 1194, 510, and 515 regarding overtime violations, pursuant to California Labor Code section 558.

d. <u>FAILURE TO PAY MINIMUM WAGE UNDER CAL. LAB. CODES</u>

129.    California Minimum Wage Order and California Labor Code section 1182.12 provide the state minimum wages: $15.50 in 2023, $14.00 in 2022, $13.00 in 2021, and $12.00 in 2020.  The City of Mountain View Minimum Wage Ordinance provides the city minimum wages: $18.15 in 2023, $17.10 in 2022, $16.30 in 2021 and $16.05 in 2020.

130.    The payment of a less amount than the minimum wage is unlawful under California Labor Code section 1197. Every employer shall pay each employee minimum wages for "all hours worked." (Cal. Code Regs., tit. 8, § 11050, subd. 4(A).)

131.    Under California Labor Code section 515, subdivision (d) (2), when an employee works overtime and is not paid anything for that overtime (such as a non-exempt employee being paid a salary), that is a failure to pay the minimum wage for all hours worked. Thus, DAI and cooks were not compensated at all for the overtime hours.

132.    There is a civil penalty for each underpaid employee for each pay period for which the employee is underpaid minimum wages of $100 for an initial violation and of $250 for each subsequent violation of California Labor Code sections 1182.12, 1194, 1194.2, pursuant to California Labor Code section 1197.1.

e. <u>CONVERSION OF TIPS</u>

133.    Pursuant to California Labor Code section 351, every gratuity paid, given or left for an employee by a patron is the sole property of the employee or employees to whom it was paid, given, or left for, and therefore an employer or its agents are not permitted to share in any tips left for employees or make deductions from an employee's wages because of those tips.

134.    Pursuant to California Labor Code section 351, an employer who permits patrons to pay gratuities by credit card must pay employees the full amount of the gratuity that the patron indicated on

the credit card slip, without any deductions for credit card payment processing fees or costs that may be charged to the employer by the credit card company.  Moreover, such gratuities must be paid to employees no later than the next regular payday following the date the patron authorized the credit card payment.

135.    Defendants required the waitstaff to contribute to a tip pool, and arbitrarily designed a numerical system to distribute tips. Defendants first allocate 3% of the tips to the corporation (for credit card payment processing fees as claimed by Defendants.) Then among the rest 97%, Defendant allocated 4% to the ushers, including Defendant Liu who considered her as such while overseeing the restaurant's operation, 20% to the kitchen staff, and 76% to the waitstaff (bussers would normally receive 50% of the tips that waiters and waitress do).

136.    Defendants violated California Labor Code § 351 by retaining part of the tips for the corporation (to cover credit card payment processing fees), by distributing part of the tips to the owner of the business, LIU, and by designing and implementing an arbitrary and capricious tip pooling and distributing system.

137.    There is a civil penalty of $100 for each aggrieved employee per pay period for the initial violation, and $200 for each subsequent violation of Cal. Lab. Code § 351 regarding conversion of tips, pursuant to California Labor Code section 2699(f)(2).

f. <u>FAILURE TO FURNISH ACCURATE ITEMIZED WAGE STATEMENTS</u>

138.    Pursuant to California Labor Code section 226, every employer shall, semimonthly or at the time of each payment of wages, furnish an employee with an accurate itemized statement in writing.

139.    Defendants failed to furnish the employees with accurate itemized wage statements by understating minimum wages, overtime compensations, split shift premiums, rest and meal break premiums, and tips, among other things. Thus, Defendants failed to report accurately the "gross wages earned," "net wages earned," "all deductions," all applicable hourly rate," and "total hours worked" within the meaning of subdivision (a) of California Labor Code section 226.

140.    Furthermore, Defendants permit, authorize, ratify, or even encourage the employees to use two social security numbers to fraudulently report wages so that Defendants evaded paying the employees' overtime compensation and evaded paying part of Defendants' federal and state taxes. As a result, the employees' itemized wage statements were generally inaccurate with respect to the "gross wages earned,"

"net wages earned," "all deductions," all applicable hourly rate," and "total hours worked" within the meaning of subdivision (a) of Cal. Lab. Code § 226.

141.    There is a civil penalty of $250 for each aggrieved employee for an initial violation and one thousand dollars ($1,000) for each subsequent wage statement violation, pursuant to California Labor Code section 226.3.

# PRAYER

WHEREFORE, Plaintiff demands the following for their claims for relief:

1.  Failure to Pay Minimum Wages Under FLSA: Damages to be determined at the time of trial and in excess of $153, and liquidate damages in the same amount;

2.  Failure to Pay Overtime Compensation Under FLSA: Damages to be determined at the time of trial and in excess of $25, 588, and liquidate damages in the same amount;

3.  Unlawful Retention of Tips Under FLSA: Damages to be determined at the time of trial and in excess of $33,921, and liquidated damages in the same amount;

4.  Conversion of Tips Under California Law: Damages to be determined at the time of trial and in excess of $33,921, and exemplary damages be determined at the time of trial;

5.  Failure to Pay Overtime Compensation Under Cal. Lab. Code §§1194, 510, 515: Damages to be determined at the time of trial and in excess of $25, 588;

6.  Failure to Pay Minimum Wage Under Cal. Lab. Code §§ 1182.12, 1194, 1194.2, 1197,  Mountain View Minimum Wage Ordinance: Damages to be determined at the time of trial and in excess of $10,189, and liquidated damages in the same amount;

7.  Failure to Provide Rest and Meal Periods Under Cal Lab. Code, §§ 226.7 and IWC ORDER 5-2001: Damages to be determined at the time of trial and in excess of $30,004;

8.  Failure to Furnish Accurate Itemized Wage Statements Under Cal. Lab. Code §226: Damages to be determined at the time of trial and in excess of $4,000;

9.  Failure to Timely Pay Wages Due and Owning Upon Termination of Employment Under Cal. Lab. Code, §§ 201,202,203, 218.5: Damages to be determined at the time of trial and in excess of $6, 924;

10. Wrongful Termination in Violation of Public Policy (Tameny Claim): Damages to be determined

COMPLAINT

at the time of trial and in excess of $90,000, and exemplary damages be determined at the time of trial;

11. Retaliation Under Cal. Lab. Code, § 98.6: Damages to be determined at the time of trial and in excess of $90,000, and exemplary damages be determined at the time of trial;

12. Whistleblower Retaliation Under Cal. Lab. Code, § 1102.5: Damages to be determined at the time of trial and in excess of $90,000, and exemplary damages be determined at the time of trial;

13. Unfair Competition Under CAL. UCL §§ 17200-17210: Restitution and Permanent Injunction, pursuant to Cal. Bus. & Prof. Code § 17203.

14. Private Attorney General Act of 2004: Civil penalties to be determined at the time of trial and in excess of $820,400;

15. For each claim, a prejudgment interest;

16. For attorney's fees and costs;

17. For any such other and further relief as the Court may deem just and proper.

## **JURY DEMAND**

Plaintiffs hereby demand a trial by jury of all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.


Dated:   January 22, 2024

X. Young Lai, Esq., Attorney for Plaintiff

# EXHIBIT A



**LAW OFFICES OF**
111 N MARKET ST, STE 300
SAN JOSE, CA 95113
GAGELEGAL@GMAIL.COM

**X. YOUNG LAI**
PHONE: 408.228.3995
510.580.8588
FAX: 866.610.9505

November 15, 2023

<u>**VIA CERTIFIED  MAIL**</u>
Erdan Liu
3 Kingdoms, Inc.
134 Castro St
Mountain View, CA 94041

### <u>NOTICE OF LABOR CODE VIOLATIONS PURSUANT TO LABOR CODE SECTION 2699.3</u>

To:     Department of Industrial Relations
        Defendants: Erdan Liu, 3 Kingdoms, Inc., d.b.a. 3 Kingdoms Hot Pot
        Restaurant, and its owner, director, officer, or managing agent

From: Plaintiff: Mengyang Dai ("Dai"), on behalf of themselves and all current
and former employees who worked for Erdan Liu and 3 Kingdoms Inc.


To whom it may concern:

Defendants have been running a restaurant business called 3 Kingdoms, Inc. since 2018. At all times relevant herein, Defendants set an hourly rate for most employees, including ushers, servers, cook assistants, and dishwashers. Defendants set a fixed monthly salary for Dai and cooks. However, none of Dai and cooks were exempt employees. Defendants misclassified Dai as an exempt employee.

### **COUNT-1-FAILURE TO PROVIDE REST AND MEAL PERIODS**

Rest periods are breaks taken at "the rate of ten (10) minutes net rest time per four (4) hours" worked and must be "be counted as hours worked for which there shall be no deduction from wages."   (Cal. Code Regs., tit. 8, § 11050, subd. 12.)

A "bona fide meal period" is a break that lasts at least 30 minutes, but no longer than 60 minutes, during which "the employee is relieved of all duty." (See Cal. Code Regs., tit. 8, § 11050, subd. 11; Div. of Labor Standards Enf't, Opinion Letter on Hours Worked: Split Shift (Dec.11, 2002).)

Pursuant to California Labor Code section §§ 226.7 and IWC order 5-2001, rest periods must be authorized and permitted at the rate of ten (10) minutes for every four (4) hours, and employers must pay nonexempt employees an hour of pay at their regular rate for each workday that a rest period is not provided; meal periods must be authorized and permitted at the rate of thirty (30) minutes for every five (5) hours, and employers must pay nonexempt employees an hour of pay at their regular rate for each workday that a rest period is not provided.

The employees' work started at 11:00 a.m. and normally ended around 11:30 p.m, with a two-hour hour shift break taking place around 2:30 p.m-4:30 p.m. or 2:00 p.m-4:00 p.m.  The employees worked at least nine and a half (9.5)  hours per day, and the evening shift lasted more than five (5) hours. Defendants failed to authorize and permit the employees to have rest periods of 10 minutes when the employees worked over four (4) hours and meal periods of 30 minutes when the employees worked five (5) hours, as they were required to remain on the premises and be on duty at all times, ready to serve patrons who frequently arrived at varied odd hours.

## COUNT 2- FAILURE TO PAY SPLIT SHIFT PREMIUM

Wage Order No. 5 defines a "split shift" as "a work schedule" that "is interrupted by non-paid non-working periods established by the employer, other than bona fide rest or meal breaks." (Cal. Code Regs., tit. 8, § 11050, subd. 2(R).) "When an employee works a split shift, one hour's pay at the minimum wage shall be paid in addition to the minimum wage for that workday, …." (Cal. Code Regs., tit. 8, § 11050, subd. 4(C).)

The interval period was not a "bona fide rest period," which by definition, was paid. In addition, because the interval period was longer than 60 minutes, it was not a "bona fide meal period."

Full-time employees work both lunch and dinner shifts with a two-hour hour shift break taking place around 2:30 p.m-4:30 p.m. or 2:00 p.m-4:00 p.m. Defendants failed to compensate the employees (except for those compensated with a fixed monthly salaries) with one hour's pay at the minimum wage.

## COUNT 3- FAILURE TO PAY OVERTIME COMPENSATION

Pursuant to California Labor Code section 510 and Industrial Welfare Commission ("thereafter "IWC") Order 5-2001 (Cal. Code Regs., tit. 8, § 11050, subd. 3), Defendants were required to pay Plaintiff for any work in excess of eight (8) hours in one workday and in excess of forty (40) hours in any one workweek at the rate of no less than one and one-half (1-1/2) times their regular rate of pay, and any work in excess of twelve (12) hours in one day and any work in excess of eight (8) hours on the seventh day of a workweek at the rate of no less than twice their regular rate of pay.

California Labor Code section 515, subdivision (d) (1) provides: "[f]or the purpose of computing the overtime rate of compensation required to be paid to a nonexempt full-time salaried employee, the employee's regular hourly rate shall be1/40th of the employee's weekly salary."

California Labor Code section 515, subdivision (d) (2) provides: "[p]ayment of a fixed salary to a nonexempt employee shall be deemed to provide compensation only for the employee's regular, nonovertime hours, notwithstanding any private agreement to the contrary."

At all times relevant herein, full-time employees worked overtime. For example, Dai and other servers worked at least nine and a half (9.5) hours a day, 5 days a week. The kitchen staff worked at least nine and a half (9.5) hours a day, five and a half (5.5) days a week.

Defendants paid fixed salaries to Dai and cooks without compensating them for their overtime work hours. In addition, Defendants misclassified certain employees as exempt. Dai, for example, though designated as a manager by Defendants, had no authority to fire or hire employees or make recommendations for recruiting or promotion, she was not able to regularly exercise independent judgment and discretion, and her primary duty was serving customers, which made up 90% of her daily duties, and her monthly salary was below two times the full-time state minimum wage. (Cal. Code Regs., tit. 8, § 11050, subd.1(A)(1).)

## COUNT 4- FAILURE TO PAY MINIMUM WAGE UNDER CAL. LAB. CODES

California Minimum Wage Order and California Labor Code section 1182.12 provide the state minimum wages: $15.50 in 2023, $14.00 in 2022, $13.00 in 2021, and $12.00 in 2020.  City of Mountain View Minimum Wage Ordinance provides the city minimum wages: $18.15 in 2023, $17.10 in 2022, $16.30 in 2021 and $16.05 in 2020. The payment of a less amount than the minimum wage is unlawful under California Labor Code section 1197.

Every employer shall pay to each employee minimum wages for "all hours worked." (Cal. Code Regs., tit. 8, § 11050, subd. 4(A).) Under California Labor Code section 515, subdivision (d) (2), when an employee works overtime and is not paid anything for that overtime (such as a non-exempt employee being paid a salary), that is a failure to pay the minimum wage for all hours worked. Thus, Dai and cooks were not compensated at all for the overtime hours.

## COUNT 5- CONVERSION OF TIPS

Pursuant to California Labor Code section 351, every gratuity paid, given or left for an employee by a patron is the sole property of the employee or employees to whom it was paid, given, or left for, and therefore an employer or its agents are not permitted to share in any tips left for employees or make deductions from an employee's wages because of those tips.

Pursuant to California Labor Code section 351, an employer who permits patrons to pay gratuities by credit card must pay employees the full amount of the gratuity that the patron indicated on the credit card slip, without any deductions for credit card payment processing fees or costs that may be charged to the employer by the credit card company.  Moreover, such gratuities must be paid to employees no later than the next regular payday following the date the patron authorized the credit card payment.

Defendants required the waitstaff to contribute to a tip pool, and arbitrarily designed a numerical system to distribute tips. Defendants first allocate 3% of the tips to the corporation (for credit card payment processing fees as claimed by Defendants.) Then among the rest 97%, Defendant allocated 4% to the ushers, including Defendant Liu who considered her as such while overseeing the restaurant's operation, 20% to the kitchen staff, and 76% to the waitstaff (bussers would normally receive 50% of the tips that waiters and waitress do).

Defendants violated California Labor Code § 351 by retaining part of the tips for the corporation (to cover credit card payment processing fees), by distributing part of the tips to the owner of the business, Defendant Liu, and by designing and implementing an arbitrary and capricious tip pooling and distributing system.

## COUNT 6-FAILURE TO FURNISH ACCURATE ITEMIZED WAGE STATEMENTS

Pursuant to California Labor Code section 226, every employer shall, semimonthly or at the time of each payment of wages, furnish an employee with an accurate itemized statement in writing.

Defendants failed to furnish the employees with accurate itemized wage statements by understating minimum wages, overtime compensations, split shift premiums, rest and meal break premiums, and tips, among other things. Thus, Defendants failed to report accurately the "gross wages earned," "net wages earned," "all deductions," "all applicable hourly rate," and "total hours worked" within the meaning of subdivision (a) of Cal. Lab. Code § 226.

Furthermore, Defendants permit, authorize, ratify, or even enourage the employees to use two social security numbers to fraudulently report wages so that those employees avoided part of their income taxes and Defendants avoided paying them overtime compensation.

## CIVIL PENALTIES

The civil penalties include but are not limited to the following:

1.  Civil penalty of $50 for each aggrieved employee per day period for each initial violation and $100 for each subsequent violation of IWC ORDER 5-2001, subd. 11 and 12 for failure to provide rest and meal breaks, pursuant to Cal. Lab. Code § 558;

2.  Civil penalty of $50 for each aggrieved employee per day period for each initial violation and $100 for each subsequent violation of IWC ORDER 5-2001, subd. 4(C) for failure to pay split shift premiums, pursuant to Cal. Lab. Code § 558;

3.  Civil penalty of $100 for each aggrieved employee per pay period for the initial violation, and $200 for each subsequent violation of Cal. Lab. Code §§1194, 510, 515 regarding overtime violations, pursuant to Cal. Lab. Code §558;

4.  Civil penalty for each underpaid employee for each pay period for which

the employee is underpaid minimum wages of $100 for an initial violation and of $250 for each subsequent violation of Cal. Lab. Code §§ 1182.12, 1194, 1194.2, pursuant to Cal. Lab. Code § 1197.1;

5. Civil penalty of $100 for each aggrieved employee per pay period for the initial violation, and $200 for each subsequent violation of Cal. Lab. Code § 351 regarding conversion of tips, pursuant to Cal. Lab. Code §2699(f)(2);

6. Civil penalty of $250 for each aggrieved employee for an initial violation and one thousand dollars ($1,000) for each subsequent wage statement violation, pursuant to Cal. Lab. Code § 226.3.

It is believed that such violations aforementioned are ongoing, systematic, and continuous, and have injured and continue to injure other similarly situated employees.  Plaintiff intends to bring an action against Erdan Liu and 3 Kingdoms, Inc., under the Private Attorneys General Act ("PAGA") on behalf of her and other current and former employees. If permitted, she will seek any and all amounts capable of being collected by the Commission pursuant to Labor Code Section 2699.3 et seq.

Respectfully submitted,

X. Young Lai, Esq., attorney for Plaintiff

 Gmail

X. Young Lai <gagelegal@gmail.com>

---

**Thank you for submission of your PAGA Case.**
1 message

---

**LWDA DO NOT REPLY** <lwdadonotreply@dir.ca.gov>                          Wed, Nov 15, 2023 at 2:53 PM
To: "gagelegal@gmail.com" <gagelegal@gmail.com>

11/15/2023

LWDA Case No. LWDA-CM-994566-23
Law Firm : Law Offices of X. Young Lai
Plaintiff Name : Mengyang Dai
Employer: 3 Kingdoms, Inc.
Filing Fee : $75.00
IFP Claimed : No

Item submitted: Initial PAGA Notice

Thank you for your submission to the Labor and Workforce Development Agency. Please make a note of the LWDA Case No. above as you may need this number for future reference when filing any subsequent documents for this Case.

If you have questions or concerns regarding this submission or your case, please send an email to pagainfo@dir.ca.gov.

DIR PAGA Unit on behalf of
Labor and Workforce Development Agency

Website: http://labor.ca.gov/Private_Attorneys_General_Act.htm

**U.S. Postal Service**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at *www.usps.com®.*

OFFICIAL USE

Mountain View CA 94041   0415

Certified Mail Fee   $4.35

$

Extra Services & Fees (check box, add fee as appropriate)   $3.55

☐ Return Receipt (hardcopy)          $ $0.00
☐ Return Receipt (electronic)        $ $0.00
☐ Certified Mail Restricted Delivery $ $0.00
☐ Adult Signature Required           $ $0.00
☐ Adult Signature Restricted Delivery $

Postage   $0.66

$

Total Postage and Fees
$ $8.76

Sent To   Eden Lu   3Kingdoms Inc

Street and Apt. No., or PO Box No.   13 4 Castro St

City, State, ZIP+4®   Mountain View, CA94041

PS Form postmark: HILL STATION  Postmark Here  NOV 15 2023  USPS IN 2023