X. Young Lai, #275396
Law Offices of X. Young Lai
111 N. Market Street, Suite 300
San Jose, CA 95113
TEL: (408)228-3995
FAX: (866)610-9505
gagelegal@gmail.com

Attorney for Plaintiff

# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| MENGYANG DAI <br><br> Plaintiff <br><br> vs. <br><br> 3 KINGDOMS, INC., <br> a California Corporation; ERDAN LIU, <br> an individual, <br><br><br> Defendants. | CASE NO. :   5:24-cv-00356-VKD <br><br> PLAINTIFF' S MOTION FOR LEAVE TO FILE AMENDED COMPLAINT <br><br><br> Hearing    Date:    6/25/2024 <br> Hearing    Time:    10:00   a.m. <br> Judge: Hon. Virginia K. DeMarchi |

Pursuant to Rule 15 of the Federal Rules of Civil Procedure, Plaintiff respectfully move the Court for leave to file the attached First Amended Complaint. Rule 15 provides that "a party may amend its pleading [with] the court's leave" and that "[t]he court should freely give leave when justice so requires." (Fed. R. Civ. P. 15(a)(2).)

Plaintiffs move to file the Amended Complaint within the time permitted by the Court in the Case management  order (Doc. 21). Allowing Plaintiff to file the Amended Complaint would serve justice and promote judicial efficiency. Further, there would be no substantial or undue prejudice, bad faith, undue delay, or futility.

Through the Amended Complaint, Plaintiffs seek to add three new Plaintiff CESAR FELIPE, MARIE ORTIZ, and JULIO CALICIA, who were Defendants' former employees and who were alleged suffered from Defendants' unlawful labor practices and wrongful termination, and one corporate defendant 3 KINGDOMS, LLC, which operated the restaurant after 3 KINGDOMS, INC. were dissolved on or about July 13, 2023, and which was alleged to be responsible, along with other defendants, for the unlawful labor practices and wrongful termination. Plaintiff also seek to add one cause of action of failure to pay split shift premium under the state law.

For all these reasons, and those stated in the attached memorandum in support, Plaintiff respectfully request that the Court grant Plaintiffs leave to file the attached Amended Complaint.

Dated: May 14, 2024      _____ /s/ X. Young Lai _____
                              X. Young Lai, Esq., Attorney for Plaintiff

## MEMORANDUM OF POINTS AND AUTHORITIES

## PROCEDURAL HISTORY

On January 22, 2024, Plaintiff Mengyang Dai filed the original complaint, alleging the following cause of action.

(1) Failure to Pay Minimum Wages Under FLSA, 29 USC §§ 207, 216;

(2) Failure to Pay Overtime Compensation Under FLSA, 29 USC §§ 207, 216;

(3) Unlawful Retention of Tips Under FLSA, 29 USC §§ 203, 216;

(4) Conversion of Tips under California Law;

(5) Failure to Pay Overtime Compensation Under Cal. Lab. Code §§1194, 510, 515;

(6) Failure to Pay Minimum Wage Under Cal. Lab. Code §§ 1182.12, 1194, 1194.2, 1197, Mountain View Minimum Wage Ordinance;

(7) Failure to Provide Meal and Rest Periods Under Cal Lab. Code, §§ 226.7 and IWC ORDER 5-2001, subd. 12;

8) Failure to Furnish Accurate Itemized Wage Statements Under Cal. Lab. Code §226;

(9) Failure to Timely Pay Wages Due and Owning Upon Termination of Employment Under Cal. Lab. Code, §§ 201,202, 203, 218.5;

(10) Wrongful Termination in Violation of Public Policy (Tameny Claim);

(11) Retaliation Under Cal. Lab. Code, § 98.6;

(12) Whistleblower Retaliation Under Cal. Lab. Code, § 1102.5

(13) Unfair Competition Under CAL. UCL §§ 17200-17210;

(14) Private Attorney General Act of 2004.

On April 24, 2024, the Court issued a case management order which allowed parties to file amended pleadings no later than May 14, 2024. (Dkt. 21.)

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 15, "a party may amend its pleading only with the opposing party's written consent or the court's leave." (Fed. R. Civ. P. 15(a)(2). )"The court should freely give leave when justice so requires." Id. A district court ordinarily must grant leave to amend unless one or more of the following "Foman factors" is present: (1) undue delay, (2) bad faith or dilatory

---

motive, (3) repeated failure to cure deficiencies by amendment, (4) undue prejudice to the opposing party, or (5) futility of amendment. (See *Eminence Capital, LLC v. Aspeon, Inc.*(9th Cir. 2003) 316 F.3d 1048, 1052, citing *Foman v. Davis* (1962) 371 U.S. 178, 182)).

## DISCUSSION

Plaintiff seek to add (1) three new plaintiffs  CESAR FELIPE,  Marie Ortiz, and Julio Calicia (2) one corporate defendant 3 KINGDOMS, LLC and (3) one cause of action of failure to pay split shift premium under the state law pertinent to the three new plaintiffs.

There is no undue delay, bad faith, or dilatory motive by Plaintiffs. Plaintiffs seek to file the Amended Complaint within the time allowed by the Court to file amended pleadings, (Dkt. 21), and it is supported by facts and information uncovered by Plaintiff. In addition, this is the first amended complaint that Plaintiff seek for leave to file.

Moreover, there will be no substantial or undue prejudice to the original Defendants. "The undue prejudice which a court must guard against is that prejudice which would cause a party undue difficulty in prosecuting a lawsuit as a result of a change of tactics or theories on the part of the other party*.*" (*Laatz v. Zazzle, Inc.*, No. 22-CV-04844-BLF, 2023 WL 4550941, at *3 (N.D. Cal. Mar. 13, 2023) Defendants bear the burden of showing prejudice. (*DCD Programs, Ltd. V. Leighton* (9th Cir. 1987). 833 F.2d 183, 187.)

The amended complaint includes the same causes of action and substantive allegations as the initial complaint. Although the claim of failure to split shift premiums is a new cause of action, the PAGA claim already included the allegation (Plaintiff Dai did not suffer from the alleged failure because her hourly rate far exceeds minimum hourly rate.) In addition, Plaintiff seeks to add parties and state law claims based on the same substantive allegations as the initial complaint. The new plaintiffs suffered from the same unlawful labor practices and wrongful termination, and the new corporate defendant, is responsible, along with other defendants, for the unlawful labor practices and wrongful termination, because it operated the restaurant after 3 Kingdoms, Inc. were dissolved on or about July 13, 2023.

Finally, there will be no futility resulting from Plaintiff's amended complaint. In the context of a motion to amend, "'[f]utility' means that the complaint, as amended, would fail to state a claim upon which relief could be granted." (*In re Burlington Coat Factory Sec. Litig.* (3rd Cir. 1997)

114 F.3d 1410, 1434)) Therefore, the court may refuse to allow an amendment that fails to state a cause of action because it would not survive a motion to dismiss. (*See, e.g., Massarsky v. General Motors Corp.* (3rd Cir. 1983), 706 F.2d 111, 125) Here, the Amended Complaint states viable claims against all Defendants.

## CONCLUSION

For these reasons, Plaintiff respectfully asks that the Court grant leave to file the attached Amended Complaint.

Dated:   May 14, 2024        _____/s/ X. Young Lai_____

X. Young Lai, Esq., Attorney for Plaintiff

# EXHIBIT A

X. Young Lai, #275396
Law Offices of X. Young Lai
111 N. Market Street, Suite 300
San Jose, CA 95113
TEL: (408)228-3995
FAX: (866)610-9505
gagelegal@gmail.com

Attorney for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

MENGYANG DAI, CESAR FELIPE, MARIE ORTIZ, and JULIO CALICIA

       Plaintiff

      vs.

3 KINGDOMS, INC.,
a California Corporation;
3 KINGDOMS, LLC,
a Delware Limited Liability Corporation;
ERDAN LIU, an individual

      Defendants.

CASE NO. :  5:24-cv-00356-VKD
.
**PLAINTIFFS' FIRST AMENDED COMPLAINT**
(1)    Failure to Pay Minimum Wages Under FLSA, 29 USC §§ 207, 216;
(2)    Failure to Pay Overtime Compensation Under FLSA, 29 USC §§ 207, 216;
(3)    Unlawful Retention of Tips Under FLSA, 29 USC §§ 203, 216;
(4)    Conversion of Tips under California Law;
(5)    Failure to Pay Overtime Compensation Under Cal. Lab. Code §§1194, 510, 515;
(6)    Failure to Pay Minimum Wage Under Cal. Lab. Code §§ 1182.12, 1194, 1194.2, 1197, Mountain View Minimum Wage Ordinance;
(7)    Failure to Provide Meal and Rest Periods Under Cal Lab. Code, §§ 226.7 and IWC ORDER 5-2001, subd. 12;
(8)    Failure to Pay Split Shift Premium under Cal. Code Regs., tit. 8, § 11050
(9)    Failure to Furnish Accurate Itemized Wage Statements Under Cal. Lab. Code §226;
(10)   Failure to Timely Pay Wages Due and Owning Upon Termination of Employment Under Cal. Lab. Code, §§ 201,202, 203, 218.5;
(11)   Wrongful Termination in Violation of Public Policy (Tameny Claim);
(12)   Retaliation Under Cal. Lab. Code, § 98.6;
(13)   Whistleblower Retaliation Under Cal. Lab. Code, § 1102.5
(14)   Unfair Competition Under CAL. UCL §§ 17200-17210;
(15)   Private Attorney General Act of 2004;
JURY DEMANDED

## JURISDICTION

1.    This Court has federal question jurisdiction over Plaintiff's Fair Labor Standards Act (FLSA) claims pursuant to 28 USC § 1331. The minimum and overtime wages provisions of the FLSA apply to any employee who "is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce." (29 U.S.C. § 207, § 206.)

2.    Defendants, as the employer, have an annual gross volume of sales no less than $500, 000, and employees engaged in the production or processing of food, or otherwise working on food or food materials, handling and selling food, beverages, and liquors, that have been moved in or produced for commerce by any person. Plaintiff, as the employee, is engaged in the production or processing of food, or otherwise working on food or food materials for commerce.

3.    Plaintiff's state law claims are so closely related to his federal law claims that they form part of the same case or controversy under Article III of the United States Constitution. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

## VENUE

4.    Venue is appropriate in this Court under 28 U.S.C. § 1391 because the events giving rise to this complaint occurred in the Santa Clara County of California, the Northern District of California. Plaintiff is and was at all times relevant herein a resident of the Santa Clara County of California, the Northern District of California.

5.    The corporate Defendant 3 KINGDOMS, INC. is a corporation incorporated under the laws of California with its principal place of the restaurant business located at 134 Castro Street, City of Mountain View, the Santa Clara County of California, the Northern District of California.

6.    The corporate Defendant 3 KINGDOMS, LLC, is a Delaware limited liability company registered as an out-of-state limited liability company with the Office of the Secretary of State for the State of California, with its principal place of the restaurant business located at 134B Castro Street, City of Mountain View, the Santa Clara County of California, the Northern District of California.

7.    A substantial part of the events or omissions giving rise to the claims occurred in the Santa

Clara County of California, the Northern District of California. At all times relevant herein, Defendants employed Plaintiffs at its Santa Clara County location and conducted regular, substantial, and sustained business activity in the Santa Clara County of California, the Northern District of California.

**PARTIES**

8. Plaintiff MENGYANG DAI ("DAI") is an individual and resident of the County of Santa Clara, the State of California. At all times relevant to this action, until her termination in July 2023, she was employed with Defendants as a restaurant worker.

9. Plaintiff Cesar Felipe ("FELIPE") , is an individual and resident of the County of Santa Clara, the State of California. At all times relevant to this action, from approximately March 10, 2021 until February 10, 2024, he was employed with Defendants as a restaurant worker.

10. Plaintiff Marie Ortiz ("ORTIZ"), is an individual and resident of the County of Santa Clara, the State of California. At all times relevant to this action, from approximately March 10, 2021 until February 2, 2024, she was employed with Defendants as a restaurant worker.

11. Plaintiff Julio Calicia ("CALICIA"), is an individual and resident of the County of Santa Clara, the State of California. At all times relevant to this action,  from approximately September 13, 2023 until February 22, 2024, he was employed with Defendants as a restaurant worker.

12. Defendant 3 KINGDOMS, INC., at all times relevant to this action, until its dissolution on July 13, 2023, was a California Corporation with its principal place of business located in the City of Mountain View, the County of Santa Clara, the State of California.

13. Defendant 3 KINGDOMS, LLC, at all times relevant to this action, is a Delaware limited liability company registered as an out-of-state limited liability company with the Office of the Secretary of State for the State of California,  with its principal place of business located in the City of Mountain View, the County of Santa Clara, the State of California.

14. Defendant Erdan Liu ("LIU") is an individual and resident of the County of Santa Clara, the State of California. At all times relevant to this action,  she has been running a restaurant called 3 Kingdoms Hot Pot located in the City of Mountain View, the County of Santa Clara, the State of California, since 2018, with corporate defendant 3 KINGDOMS, INC. and 3 KINGDOMS, LLC.

# **ALTER EGO ALLEGATION**

15. The Corporate Defendant 3 KINGDOMS, INC. has been running a restaurant business called 3 Kingdoms Hot Pot since 2020 until July 13, 2023, when Defendant Liu filed a certification of dissolution with the California Secretary of State. However, after the dissolution, Defendant Liu still used 3 KINGDOMS, INC to run the restaurant for some time, including having the employee's paychecks and business expenses paid from the corporate accounts. Defendant Liu did not inform Plaintiffs or other employees that 3 KINGDOMS, INC was dissolved.

16. On or about September 15, 2023, Defendant LIU caused 3 KINGDOMS, LLC formed under the laws of the state of Delaware, and then registered as an out-of-state limited liability company with the Office of the Secretary of State for the State of California on or about October 9, 2023. Then Defendant LIU used 3 KINGDOMS, LLC to run the same restaurant business called 3 Kingdoms Hot Pot.

17. At all times herein relevant, defendants, and each of them, was an owner, a co-owner, an agent, representative, partner, and/or alter ego of its co-defendants, or otherwise acting on behalf of each and every remaining defendant and, in doing the things hereinafter alleged, were acting within the course and scope of their authorities as an owner, a co-owner, an agent, representative, partner, and/or alter ego of its co-defendants, with the full knowledge, permission, and consent of each and every remaining defendant, each co-defendant having ratified the acts of the other co-defendants.

18. Plaintiffs are informed and believe, and thereon allege that each of the defendants named herein as Does 1 through 10, inclusive, were and are in some manner responsible for the actions, acts and omissions herein alleged, and for the damages caused by the defendants, and are, therefore, jointly and severally liable for the damages caused to Plaintiff.

19. Plaintiffs are informed and believe, and thereon allege that each of the defendants including Does 1 through 10, inclusive, were, at all times herein relevant, acting in concert with, and in conspiracy with, each and every one of the remaining defendants.

20. Wherever appearing in this Complaint, each and every reference to defendants or to any of them, is intended to be and shall be a reference to all defendants herein, and to each of them, named and unnamed, including all fictitiously named defendants, unless said reference is otherwise specifically qualified.

21. Plaintiffs are informed and believe, and thereon allege that each of the defendants, including all fictitiously named defendants (hereinafter collectively referred to as "Defendant Shareholders") are, and at all times herein relevant were, shareholders of the stock and/or promoters of 3 KINGDOMS, INC. and/or 3 KINGDOMS, LLC and/or subscribers to stock therein. There exists, and at all times herein relevant existed, a unity of interest between Defendant Shareholders and 3 KINGDOMS, INC. and/or 3 KINGDOMS, LLC such that any individuality and separateness between the Defendant Shareholders and 3 KINGDOMS, INC. and/or 3 KINGDOMS, LLC has ceased, and 3 KINGDOMS, INC. and/or 3 KINGDOMS, LLC is the alter ego of Defendant Shareholders as follows:

    a. Plaintiffs allege that 3 KINGDOMS, INC. and/or 3 KINGDOMS, LLC are, and all times herein relevant was, a mere shell and sham without capital, assets, stock, or stockholders. 3 KINGDOMS, INC. and/or 3 KINGDOMS, LLC was conceived, intended, and used by Defendant Shareholders as a device to avoid individual liability and for the purpose of substituting a financially insolvent corporation in the place of Defendant Shareholders. At no time after 3 KINGDOMS, INC. and/or 3 KINGDOMS, LLC became incorporated was any stock authorized to be issued or issued nor has any permit for issuance of stock applied for with the Commissioner of Corporations.

    b. Plaintiffs allege that 3 KINGDOMS, INC.is, and at all times herein relevant was, so inadequately capitalized that, compared with the business to be done by 3 KINGDOMS, INC. and/or 3 KINGDOMS, LLC and the risks of loss attendant therein, their capitalization was illusory or trifling.

    c. Plaintiffs allege that 3 KINGDOMS, INC. and/or 3 KINGDOMS, LLC is, and at all times herein relevant was, the alter egos of Defendant Shareholders and there exists, and at all times herein relevant has existed, a unity of ownership between Defendant Shareholders and 3 KINGDOMS, INC. and/or 3 KINGDOMS, LLC such that any separateness has ceased to exist in that Defendant Shareholders used assets of 3 KINGDOMS, INC. and/or 3 KINGDOMS, LLC for personal use, caused assets of 3 KINGDOMS, INC. and/or 3 KINGDOMS, LLC to be transferred to them without adequate consideration, and withdrew funds from 3 KINGDOMS, INC. and/or 3 KINGDOMS, LLC's bank accounts for their personal use.

    d. Plaintiffs allege that 3 KINGDOMS, INC. and/or 3 KINGDOMS, LLC is, and at all times

relevant herein was, a mere shell, instrumentality, and conduit through which Defendant Shareholders carried on their business in the name of 3 KINGDOMS, INC. and/or 3 KINGDOMS, LLC exactly as they conducted it previous to incorporation exercising complete control and dominance of such business to such an extent that any individuality or separateness of 3 KINGDOMS, INC. and/or 3 KINGDOMS, LLC and Defendant Shareholders does not now, and at any time herein relevant did not, exist.

e.   Plaintiffs allege that 3 KINGDOMS, INC. and/or 3 KINGDOMS, LLC is, and at all times herein relevant was, controlled, dominated, and operated by Defendant Shareholders as their individual business and alter ego, in that the activities and business of 3 KINGDOMS, INC. and/or 3 KINGDOMS, LLC was carried out without the holding of Directors or Shareholders meetings, no records or minutes of any corporate proceedings were maintained, and Defendant Shareholders entered into personal transactions with 3 KINGDOMS, INC, and/or 3 KINGDOMS, LLC without the approval of other directors or shareholders.

f.   Plaintiffs allege that adherence to the fiction of separate existence of 3 KINGDOMS, INC. and/or 3 KINGDOMS, LLC as an entity distinct from Defendant Shareholders would permit abuse of the corporate privilege and would sanction fraud in that Defendant Shareholders caused funds to be withdrawn from 3 KINGDOMS, INC. and/or 3 KINGDOMS, LLC and distributed said funds without any consideration to 3 KINGDOMS, INC, and/or 3 KINGDOMS, LLC all for the purpose of avoiding and preventing attachment and execution by creditors, including Plaintiff, thereby render 3 KINGDOMS, INC. and/or 3 KINGDOMS, LLC insolvent and unable to meet its obligations.

g.   Plaintiffs allege that adherence to the fiction of the separate existence of 3 KINGDOMS, INC. and/or 3 KINGDOMS, LLC as an entity distinct from Defendant Shareholders would permit abuse of the corporate privilege and produce an inequitable result in that Defendant Shareholders represented to Plaintiff that said shareholders would be responsible for corporate obligations and the transaction complained of herein was entered into under the belief that Defendant Shareholders were, in reality, the true parties obligated.

h.   Plaintiffs allege that adherence to the fiction of the separate existence of 3 KINGDOMS, INC.

and/or 3 KINGDOMS, LLC as an entity distinct from Defendant Shareholders would permit abuse of the corporate privilege and produce an inequitable result in that Defendant Shareholders guaranteed certain of 3 KINGDOMS, INC. and/or 3 KINGDOMS, LLC's obligations, thereby enabling 3 KINGDOMS, INC. and/or 3 KINGDOMS, LLC to return to active business, without adequate financing and without capital stock, and to invite the public generally, and Plaintiff, in particular, to deal with 3 KINGDOMS, INC. and/or 3 KINGDOMS, LLC to Plaintiff's loss as herein pleaded.

22. As a result of the acts, and omissions complained of hereinabove, said Defendant Shareholders are jointly and severally liable, for all relief sought herein against 3 KINGDOMS, INC. and/or 3 KINGDOMS, LLC by Plaintiffs.

**PERSONAL LIABILITY**

23. Under FLSA, the definition of "employer" includes "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). Thus, personal liability attaches to corporate officers, managers, and supervisors acting in the interest of an employer.

24. The term "to employ" means: "(a) to exercise control over the wages, hours or working conditions, *or* (b) to suffer or permit to work, *or* (c) to engage, thereby creating a common-law employment relationship." (*Martinez v. Combs* (2010) 49 Cal. 4th 35, 64.) Employer "means any person… who directly or indirectly, or through an agent or any other person, employs or exercises control over the wages, hours, or working conditions of any person." (IWC Order No.5-2001; *Martinez*, 49 Cal. 4th at 63.)

25. Further, California Labor Code section 558.1 provides "(a) Any employer or other person acting on behalf of an employer, who violates, or causes to be violated, any provision regulating minimum wages or hours and days of work in any order of the Industrial Welfare Commission, or violates, or causes to be violated, Sections 203, 226, 226.7, 1193.6, 1194, or 2802, may be held liable as the employer for such violation (b) For purposes of this section, the term other person acting on behalf of an employer is limited to a natural person who is an owner, director, officer, or managing agent of the employer…"

26. Each individual defendant is an owner, director, officer, or managing agent of the corporate defendant 3 KINGDOMS, INC. acting in the interest of 3 KINGDOMS, INC. Individual defendants exercised control over Plaintiffs' wages, hours, and working conditions. They employed and terminated

Plaintiffs. They managed Plaintiffs' performance. They determined Plaintiffs' work hours and assigned work duties to Plaintiffs and Plaintiffs reported to them. They determined Plaintiffs' compensation. They took retaliatory action against Plaintiffs.

## FACTUAL ALLEGATIONS APPLICABLE TO ALL CLAIMS

## COUNT 1-FAILURE TO PAY MINIMUM COMPENSATION UNDER FLSA(PLAINTIFF DAI AGAINST ALL DEFENDANTS)

27. Pursuant to 29 USC § 206, every employer shall pay each of his employees wages at least $7.25 an hour.

28. In 2020, Defendants paid DAI the city minimum wages and failed to pay her 9.5 hours' work time. Defendants paid DAI wages in cash without furnishing her itemized wage statements. Defendants did not distribute tips to DAI.Defendants failed to pay DAI 9.5 hours of work time in 2021, thus violating said statute.

29. Pursuant to 29 USC § 206, DAI is entitled to minimum wages for the hours worked for which she has not been compensated, in an amount to be determined at trial.

30. Pursuant to 29 USC § 216(b), DAI is also entitled to an equal amount as liquidated damages in addition to reasonable attorney fees and costs, each in an amount to be determined at trial.

## COUNT 2-FAILURE TO PAY OVERTIME COMPENSATION UNDER FLSA(PLAINTIFF DAI, FELIPE, AND ORTIZ AGAINST ALL DEFENDANTS)

31. Plaintiffs re-allege and incorporate by reference the allegations in each and every paragraph hereinabove, as though fully set forth hereto.

32. Pursuant to 29 USC § 207, "no employer shall employ any of his employees…, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."

33. The "regular rate" is defined as "a rate per hour," computed by dividing his total remuneration for employment (except statutory exclusions) in any workweek by the total number of hours actually worked by him in that workweek with the maximum of 40 hours. (29 C.F.R. § 778.109.)

34. A monthly salary is   translated   into   a weekly salary by multiplying the monthly salary by

twelve (months) and dividing the result by fifty-two (weeks) and then dividing by the number of regular hours in a week. (29 C.F.R. § 778.113.)

35. From approximately June 2021 through July 2023, Plaintiff DAI worked for Defendants as a non-exempt waitress.

36. DAI generally worked five (5) days a week from Wednesday through Sunday. On Wednesdays and Thursdays, her job started from 11:00 a.m. to 11:30 p.m. or 12:00 a.m. and she took a two-hour shift break either from 2:30 p.m. to 4:30 p.m. or 3:30 p.m. to 5:30 p.m.

37. On Fridays, Saturdays, and Sundays, she worked from 11:00 a.m. to 5:00 p.m. or 2:00 p.m. to 11:30 p.m.

38. DAI also worked on some Mondays and Tuesdays to substitute for other employees

39. In 2022 and 2023, although DAI worked as a waitress, Defendants designated her as a manager. Although DAI had no authority to fire or hire employees or make recommendations for recruiting or promotion, she was not able to regularly exercise independent judgment and discretion, and her primary duty was serving customers, which made up 90% of her daily duties, Defendants misclassified DAI as an exempt employee and paid her a fixed monthly salary of $5,000 without compensating her overtime.

40. Plaintiff FELIPE, at all times relevant to this action, generally worked six (6) days a week.

41. From approximately March 10, 2021 until May 2022, FELIPE worked from 10:00 a.m. until 11:00 p.m. or 11:30 p.m., with a one and half (1.5) hours' break from 2:30 p.m. until 4:00 p.m. or from 3:00 p.m. until 4:30 p.m. In the first two months, FELIPE worked as a kitchen helper and dishwasher. Then in the following months, he worked from 10:00 a.m. until 12:00 p.m. as a kitchen helper and dishwasher, then from 12:00 p.m. until 11:00 p.m. or 11:30 p.m. as a busser.

42. From approximately May 2022 until Febuary 10, 2024, FELIPE worked as a busser from 11:00 a.m. until 11:00 p.m. or 11:30 p.m. with a one and half (1.5) hour's break from 2:30 p.m. until 4:00 p.m. or from 3:00 p.m. until 4:30 p.m.

43. Plaintiff ORTIZ, at all times relevant to this action, generally worked six (6) days a week, as a kitchen helper and dishwasher. From approximately March 10, 2021 until February 2, 2024, she worked from 11:00 a..m. until 11:00 p.m. or 11:20 p.m. with a two (2) hours' break from 3:00 p.m. until 5:00 p.m.

44. DAI, FELIPE and ORTIZ worked overtime. However, Defendants require each of them to provide two or more social security numbers to enable Defendants to fraudulently unreport or underreport the overtime hours worked. As a result, Defendants illegally evaded paying them overtime compensation and part of Defendants' federal and state employment taxes.

45. As a result, Defendants willfully failed to compensate DAI, FELIPE, and ORTIZ at a rate not less than one and one-half times the regular rate of pay for hours worked in excess of 40 hours per week or eight hours a day.

46. Pursuant to 29 USC § 207, DAI, FELIPE, and ORTIZ are entitled to overtime compensation for the overtime hours worked for which she has not been compensated, in an amount to be determined at trial. Pursuant to 29 USC § 216(b), DAI, FELIPE, and ORTIZ are also entitled to an equal amount as liquidated damages in addition to reasonable attorney fees and costs, each in an amount to be determined at trial.

### COUNT 3-UNLAWFUL RETENTION OF TIPS UNDER FLSA (ALL PLAINTIFFS, AGAINST ALL DEFENDANTS)

47. Plaintiffs re-allege and incorporate by reference the allegations in each and every paragraph hereinabove, as though fully set forth hereto.

48. Under 29 U.S. Code § 203 (m)(2) (B), employers are prohibited from keeping tips received by their employees, regardless of whether the employer takes a tip credit.

49. Defendants required the waitstaff to contribute to a tip pool, and arbitrarily designed a numerical system to distribute tips. Defendants first allocate 3% of the tips to the corporation (for credit card payment processing fees as claimed by Defendants.) Then among the rest 97%, Defendant allocated 4% to the ushers, including LIU who considered her as such while overseeing the restaurant's operation, 20% to the kitchen staff, and 76% to the waitstaff (bussers normally received 50% of the tips that waiters and waitress did).

50. Defendants violated the statute by retaining part of the tips, including the 3% credit card processing fees and the tips taken by LIU.

51. Under 29 U.S. Code § 216, DAI, Plaintiffs are entitled to damages in the amount of all tips unlawfully kept by Defendants, and in an additional equal amount as liquidated damages. Plaintiffs are

also entitled to reasonable attorney's fees and costs.

## COUNT 4- CONVERSION OF TIPS UNDER CALIFORNIA LAW (ALL PLAINTIFFS AGAINST ALL DEFENDANTS)

52. Plaintiffs re-allege and incorporate by reference the allegations in each and every paragraph hereinabove, as though fully set forth hereto.

53. Pursuant to California Labor Code section 351, every gratuity paid, given or left for an employee by a patron is the sole property of the employee or employees to whom it was paid, given, or left for, and therefore an employer or its agents are not permitted to share in any tips left for employees or make deductions from an employee's wages because of those tips.

54. Pursuant to California Labor Code section 351, an employer who permits patrons to pay gratuities by credit card must pay employees the full amount of the gratuity that the patron indicated on the credit card slip, without any deductions for credit card payment processing fees or costs that may be charged to the employer by the credit card company. Moreover, such gratuities must be paid to employees no later than the next regular payday following the date the patron authorized the credit card payment.

55. California Labor Code section 351 prohibits employers and agents from receiving any gratuity paid to an employee by a patron, and California Labor Code section 350, subdivision (a) and (d) defined "employer" and "agent" to include "every person other than the employer having the authority to hire or discharge any employee or supervise, direct, or control the acts of employees."

56. Defendants required the waitstaff to contribute to a tip pool, and arbitrarily designed a numerical system to distribute tips. Defendants first allocate 3% of the tips to the corporation (for credit card payment processing fees as claimed by Defendants.) Then among the rest 97%, Defendant allocated 4% to the ushers, including LIU who considered her as such while overseeing the restaurant's operation, 20% to the kitchen staff, and 76% to the waitstaff (bussers normally received 50% of the tips that waiters and waitress did).

57. Defendants determined the numeric rate of the tips. Plaintiffs, and all other employees did not have decision-making power in the distribution system designed by Defendants.

58. The tips were Plaintiffs' property, and Defendants wrongfully took part of the tips, including the 3% credit card processing fees and the tips taken by LIU, without Plaintiffs' consent, and caused

economic damages to Plaintiffs.

59. Moreover, Defendants' tip pool was arbitrary and bore no relationship to the services. Thus, the tip pooling arrangement was not a fair and reasonable distribution of the tips as required by law.

60. At all times relevant hereto, Defendants consciously disregarded Plaintiffs' property right under the clear statutory mandate, willfully took possession of a portion of the DAI's gratuities, and converted it into their own property without Plaintiffs' consent. Plaintiffs were thereby harmed by Defendants' conversion.

61. Thus, Defendants acted with malice, and their actions were continuous, knowing, and willful. Furthermore, the corporate defendant has authorized or ratified the illegal tip pool, which was designed and/or approved by its officers, directors, or managing agents.

62. Wherefore, Plaintiffs demand restitution of the gratuities wrongfully converted by Defendants in a sum to be proven at trial with an interest thereon, and punitive damages.

## COUNT 5-FAILURE TO PAY OVERTIME COMPENSATION UNDER CAL. LAB. CODES
## (PLAINTIFF DAI, FELIPE, AND ORTIZ AGAINST ALL DEFENDANTS)

63. Plaintiffs re-allege and incorporate by reference the allegations in each and every paragraph hereinabove, as though fully set forth hereto.

64. Pursuant to California Labor Code section 510 and Industrial Welfare Commission ("thereafter "IWC") Order 5-2001, Defendants were required to pay non-exempt employees for any work in excess of eight (8) hours in one workday and in excess of forty (40) hours in any one workweek at the rate of no less than one and one-half (1-1/2) times their regular rate of pay, and any work in excess of twelve (12) hours in one day and any work in excess of eight (8) hours on the seventh day of a workweek at the rate of no less than twice their regular rate of pay.

65. California Labor Code section 515, subdivision (d) (1) provides: "[f]or the purpose of computing the overtime rate of compensation required to be paid to a nonexempt full-time salaried employee, the employee's regular hourly rate shall be1/40th of the employee's weekly salary."

66. California Labor Code section 515, subdivision (d) (2) provides: "[p]ayment of a fixed salary to a nonexempt employee shall be deemed to provide compensation only for the employee's regular, nonovertime hours, notwithstanding any private agreement to the contrary."

67. In 2022 and 2023, DAI worked as a waitress. Defendants designated DAI as a manager. However, she had no authority to fire or hire employees or make recommendations for recruiting or promotion, she was not able to regularly exercise independent judgment and discretion, and her primary duty was serving customers, which made up 90% of her daily duties, and her monthly salary was below two times the full-time state minimum wage. (Cal. Code Regs., tit. 8, § 11050, subd.1(A)(1).) Defendants misclassified DAI as an exempt employee, and paid her a fixed monthly salary of $5,000 without compensating her overtime.

68. Plaintiff FELIPE, at all times relevant to this action, generally worked six (6) days a week.

69. From approximately March 10, 2021 until May 2022, FELIPE worked from 10:00 a.m. until 11:00 p.m. or 11:30 p.m., with a one and half (1.5) hour's break from 2:30 p.m. until 4:00 p.m. or from 3:00 p.m. until 4:30 p.m. In the first two month, FELIPE worked as a kitchen helper and dishwasher. Then in the following months, he worked from 10:00 a.m. until 12:00 p.m. as a kitchen helper and dishwasher, then from 12:00 p.m. until 11:00 p.m. or 11:30 p.m. as a busser.

70. From approximately May 2022 until Febuary 10, 2024, FELIPE worked as a busser from 11:00 a.m. until 11:00 p.m. or 11:30 p.m with a one and half (1.5) hour's break from 2:30 p.m. until 4:00 p.m. or from 3:00 p.m. until 4:30 p.m.

71. Plaintiff ORTIZ, at all times relevant to this action, generally worked six (6) days a week, as a kitchen helper and dishwasher. From approximately March 10, 2021 until February 2, 2024, she worked from 11:00 a..m. until 11:00 p.m. or 11:20 p.m. with a two hours' break from 3:00 p.m. until 5:00 p.m.

72. DAI, FELIPE, and ORTIZ worked overtime. However, Defendants require each of them to provide two or more social security numbers to enable Defendants to fraudulently unreport and underreport the overtime hours worked. As a result, Defendants illegally evaded paying them overtime compensation and part of Defendants' federal and state employment taxes.

73. As a result, Defendants willfully failed to compensate DAI, FELIPE, and ORTIZ at a rate not less than one and one-half times the regular rate of pay for hours worked in excess of 40 hours per week or eight hours a day.

74. Pursuant to Cal. Lab. Code §1194, DAI, FELIPE, and ORTIZ are entitled to the unpaid balance of the full amount of this overtime compensation, including interest thereon, reasonable attorney's fees,

and costs of suit.

## COUNT 6- FAILURE TO PAY MINIMUM WAGE UNDER CAL. LAB. CODES(PLAINTIFF DAI AGAINST ALL DEFENDANTS)

75. Plaintiffs re-allege and incorporate by reference the allegations in each and every paragraph hereinabove, as though fully set forth hereto.

76. Pursuant to the California Minimum Wage Order (MW-2007) and California Labor Code section 1182.12, for any employer who employs 25 or fewer employees, the state minimum wage was: (a) from January 1, 2022, through December 31, 2022, $14 per hour; (b) from January 1, 2023, to December 31, 2023, $15.50 per hour. The City of Mountain View Minimum Wage Ordinance provides the city minimum wages: $18.15 in 2023, $17.10 in 2022, $16.30 in 2021 and $16.05 in 2020.

77. The payment of a lesser amount than the minimum wage is unlawful under California Labor Code section 1197.

78. Every employer shall pay each employee minimum wages for "all hours worked." (Cal. Code Regs., tit. 8, § 11050, subd. 4(A).) Under California Labor Code section 515, subdivision (d) (2), when an employee works overtime and is not paid anything for that overtime (such as a non-exempt employee being paid a salary), that is a failure to pay the minimum wage for all hours worked.

79. Because DAI was paid a fixed monthly salary, she was not compensated at all for the overtime hours. In addition, Defendants failed to pay DAI for 9.5 hours she worked in 2020.

80. Pursuant to California Labor Code section 1194, DAI is entitled to the unpaid balance of the full amount of this minimum wage, including interest thereon, reasonable attorney's fees, and costs of suit.

81. Pursuant to California Labor Code section 1194.2, DAI is also entitled to recover liquidated damages in an amount equal to the wages unlawfully unpaid and interest thereon.

## COUNT 7-FAILURE TO PROVIDE REST AND MEAL PERIODS UNDER CAL. LAB. CODE AND IWC ORDER (ALL PLAINTIFF AGAINST ALL DEFENDANTS)

82. Plaintiffs re-allege and incorporate by reference the allegations in each and every paragraph hereinabove, as though fully set forth hereto.

83. Pursuant to California Labor Code section §§ 226.7 and IWC order 5-2001, rest periods must

be authorized and permitted at the rate of ten (10) minutes for every four (4) hours, and meal periods must be authorized and permitted at the rate of thirty (30) minutes for every five (5) hours. Employers must pay nonexempt employees an hour of pay at their regular rate for each workday that a rest period and for each workday that a meal break is not provided.

84. Plaintiffs worked at least nine (9) or 10 hours per day, and the evening shift lasted more than five (5) hours. Defendants failed to authorize and permit Plaintiffs to have rest periods of 10 minutes when they worked over four (4) hours and meal periods of 30 minutes when they worked five (5) hours, as they were required to remain on the premises and be on duty at all times, ready to serve patrons who frequently arrived at varied odd hours.

85. Plaintiffs are each thus entitled to one (1) hour of pay for each rest break violation per workday and one (1) hour of pay for each meal break violation per workday.

**COUNT 8-FAILURE TO PAY SPLIT SHIFT PREMIUM( PLAINTIFF FELIPE, ORTIZ, AND CALICIA AGAINST ALL DEFENDANTS)**

86. Wage Order No. 5 defines a "split shift" as "a work schedule" that "is interrupted by non-paid non-working periods established by the employer, other than bona fide rest or meal breaks." (Cal. Code Regs., tit. 8, § 11050, subd. 2(R).) "When an employee works a split shift, one hour's pay at the minimum wage shall be paid in addition to the minimum wage for that workday, …." (Cal. Code Regs., tit. 8, § 11050, subd. 4(C).)

87. The interval period was not a "bona fide rest period," which by definition, was paid. In addition, because the interval period was longer than 60 minutes, it was not a "bona fide meal period."

88. From approximately September 13, 2023 until February 22, 2024, Plaintiff CALICIA worked as a busser from 11:00 a.m. until 11:00 p.m. or 11:30 p.m. with a one and half (1.5) hour's break from 2:30 p.m. until 4:00 p.m. or from 3:00 p.m. until 4:30 p.m.

89. FELIPE, ORTIZ, and CALICIA worked both lunch and dinner shifts with two-hour or one-and-a-half-hour shift breaks in the afternoon. Defendants failed to compensate them with one hour's pay at the minimum wage.

90. Pursuant to Wage Order No. 5, Plaintiff DAI, FELIPE, and ORTIZ are each entitled to recover one hour's pay at the minimum wage every workday.

**COUNT 9-FAILURE TO FURNISH ACCURATE ITEMIZED WAGE STATEMENTS UNDER CAL. LAB. CODE (ALL PLAINTIFFS AGAINST ALL DEFENDANTS)**

91. Plaintiffs re-allege and incorporate by reference the allegations in each and every paragraph hereinabove, as though fully set forth hereto.

92. Pursuant to California Labor Code section 226, every employer shall, semimonthly or at the time of each payment of wages, furnish an employee with an accurate itemized statement in writing.

93. Defendants misclassified DAI as exempt, Defendant failed to report DAI's regular hourly rate.

94. Furthermore, Defendants required DAI, FELIPE, and ORTIZ to provide two or three social security numbers to enable Defendants to fraudulently unreport or underreport overtime hours. Thus, Defenants willfully failed to report DAI, FELIPE, and ORTIZ's total hours worked, or overtime compensations.

95. In addition, Defendants neither paid nor reported FELIPE, ORTIZ, and CALICIA split shift premiums. Thus, Defendants knowingly and intentionally failed to report accurately the "gross wages earned," "net wages earned," "all deductions," total hours worked," and "all applicable hourly rate" within the meaning of subdivision (a) of Cal. Lab. Code § 226.

96. Pursuant to Cal. Lab. Code § 226 (e) (1), Plaintiffs are each entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial violation and one hundred dollars ($100) for a subsequent violation, up to an aggregated penalty of four thousand dollars ($4,000), and reasonable attorney's fees and costs.

**COUNT 10-FAILURE TO TIMELY PAY WAGES DUE AND OWING UPON TERMINATION ( ALL PLAINTIFFS AGAINST ALL DEFENDANTS)**

97. Plaintiffs re-allege and incorporate by reference the allegations in each and every paragraph hereinabove, as though fully set forth hereto.

98. Pursuant to California Labor Code section 201, the wages earned and unpaid at the time of discharge are due and payable immediately. Pursuant to California Labor Code section § 202, the wages earned and unpaid at the time of resignation are due and payable not later than 72 hours thereafter.

99. Defendants violated the provisions when they willfully failed to pay DAI the minimum wages, overtime compensations, and meal and rest break premiums, upon the termination of her employment.

100. Defendants violated the provisions when they willfully failed to pay FELIPE, and ORTIZ overtime compensations, meal and rest break premiums, and split shift premimums upon the termination of their employment.

101. Defendants violated the provisions when they willfully failed to pay CALICIA meal and rest break premiums and split shift premimums, upon the termination of his employment.

102. Pursuant to California Labor Code section 203, Plaintiffs are entitled to 30 days' wages as a penalty.

103. Pursuant to California Labor Code section 218.5, Plaintiffs are entitled to reasonable attorney's fees and costs.

## COUNT 11- WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY (TAMENY CLAIM) (ALL PLAINTIFF AGAINST ALL DEFENDANTS)

104. Plaintiffs re-allege and incorporate by reference the allegations in each and every paragraph hereinabove, as though fully set forth hereto.

105. Beginning July 16, 2023, DAI was on maternity leave, during which period she discussed with LIU the issue of compensation for the time she worked on Mondays and Tuesdays (to substitute for other employees.) LIU only agreed to use the time to make up for her sick and personal leave and refused to compensate her.

106. Then on August 7, 2023, LIU sent DAI a letter accusing her of among other things, "falsely reporting employee numbers, fabricating work hours, and misappropriating wages and other benefits," and demanding she return $131, 092.41 in wages and tips that you claimed that wrongfully taken by using false identities. LIU threatened her that "[r]elevant authorities will thoroughly investigate and impose severe penalties," and "[i]dentity theft and abuse are serious crimes in California, with a minimum sentence of 2 years in prison upon conviction." LIU knew the allegations were false, and the letter constituted extortion. (See *Flatley v. Mauro* (2006), 39 Cal. 4th 299, 303.)

107. Furthermore, on November 17, 2023, after receiving a PAGA notice, LIU contacted a third party and had him convey a message to DAI threatening if she did not withdraw the complaint, LIU would throw her in jail. As a result, LIU effectively terminated her job.

108. Alternatively, LIU's actions intentionally created working conditions (such as paying

Defendants $131, 092.41 she did not owe, withdrawing the PAGA notice, and constantly subjecting herself to LIU's threats) so intolerable that a reasonable person in DAI's position would have had no reasonable alternative except to resign, and DAI resigned because of these working conditions.

109. Or, Defendants otherwise suspended or laid off DAI without pay.

110. Defendants took the adverse employment actions against DAI because she asserted her right to fair compensation under the law, opposed Defendants' unlawful employment practice, and made a charge, assisted, or participated in a PAGA investigation or proceeding.

111. Defendants require FELIPE and ORTIZ to provide two or more social security numbers to enable Defendants to fraudulently unreport and underreport the overtime hours worked. Defendants refused to pay FELIPE and ORTIZ for the overtime hours they worked. When they requested to be paid for overtime hours, Defendants threatened to reduce their hours. Defendants' actions intentionally created working conditions so intolerable that a reasonable person in FELIPE and ORTIZ's position would have had no reasonable alternative except to resign, and FELIPE and ORTIZ resigned on February 10 and February 23, 2024, respectively, because of these working conditions.

112. Defendants required FELIPE and CALICIA to clean the dining area of the restaurant. In about January or February 2024, Defendants required them to clean the range hoods (for hot pot cooking) that were installed on the ceiling. However, Defendants did not provide ladders or harness safety kits. Instead, Defendants required FELIPE and CALICIA to step on the table to reach the range hoods. Moreover, a metal bar in the range hoods could easily cut fingers. Defendants did not provide safety gloves.

113. Both FELIPE and CALICIA were concerned about their safety and requested Defendants to provide ladders, harness safety kits, and safety gloves, which Defendants refused. Defendants fired FELIPE and CALICIA on February 10 and February 22, 2024, respectively, because they refused to clean the range hoods without safety devices.

114. Alternatively, Defendants' actions intentionally created unsafety working conditions so intolerable that a reasonable person in FELIPE and CALICIA's position would have had no reasonable alternative except to resign, and FELIPE and CALICIA resigned on February 10 and February 22, 2024, respectively, because of these working conditions.

115. As the legal result of Defendants' conduct, Plaintiffs have suffered losses of wages, salary, benefits, and additional amounts of money that Plaintiffs would have received if Defendants had not been discharged actually or constructively.

116. The above-cited conduct of Defendants was done with malice, fraud, and oppression, and in reckless disregard for DAI and ORTIZ rights under applicable wage laws and FELIPE and CALICIA's under the federal Occupational Safety and Health Act ("OSHA") and California Occupational Safety and Health Act ("COSH"). As a result, Plaintiffs suffered embarrassment, mental and emotional distress, and humiliation. Plaintiffs are thus entitled to recover punitive damages in an amount according to proof.

## COUNT 12-RETALIATION IN VIOLATION OF CALIFORNIA LABOR CODE SECTION 98.6
## (PLAINTIFF DAI AGAINST ALL DEFENDANTS)

117. Plaintiffs re-allege and incorporate by reference the allegations in each and every paragraph hereinabove, as though fully set forth hereto.

118. Labor Code section 98.6 provides that "a person shall not discharge an employee or in any manner discriminate, retaliate, or take any adverse actions against any employee ... because the employee… made a written or oral complaint that he or she is owed unpaid wages, or because the employee has initiated any action or notice pursuant to Section 2699."

119. As stated before, Defendants took the adverse employment action against DAI because she asserted her right to fair compensation under the law, opposed Defendants' unlawful employment practice, and she initiated an action and served a notice on Defendants pursuant to California Labor Code section 2699.

120. As the legal result of Defendants' conduct, DAI has suffered losses of wages, salary, benefits, and additional amounts of money that Plaintiff would have received if Defendants had not retaliated against her. As a result of such retaliation and consequent harm, DAI has suffered damages in an amount according to proof.

121. Defendants terminated DAI's employment because she engaged in the protected activity. The above-cited conduct of Defendants was done with malice, fraud, and oppression, and in reckless disregard for DAI rights under applicable wage laws. As a result, DAI suffered embarrassment, mental and emotional distress, and humiliation.

122.    DAI is thus entitled to recover punitive damages in an amount according to proof.

**COUNT 13-WHISTLEBLOWER RETALIATION IN VIOLATION OF CALIFORNIA LABOR CODE SECTION 1102.5(PLAINTIFF DAI AGAINST ALL DEFENDANTS)**

123.    Plaintiffs re-allege and incorporate by reference the allegations in each and every paragraph hereinabove, as though fully set forth hereto.

124.    Labor Code section 1102.5(b) provides that "an employer, or any person acting on behalf of the employer, shall not retaliate against an employee for disclosing information .. . to a government or law enforcement agency, if the employee has reasonable cause to believe that the information discloses a violation of state or federal statutes, or a violation of or noncompliance with a local, state, or federal rule or regulation."

125.    As stated before, Defendants took the adverse employment action against DAI because in part, she initiated an action and served a notice on Defendants pursuant to California Labor Code section 2699.

126.    As the legal result of Defendants' conduct, Plaintiff has suffered losses of wages, salary, benefits, and additional amounts of money that Plaintiff would have received if Defendants had not retaliated against her. As a result of such retaliation and consequent harm, Plaintiff has suffered damages in an amount according to proof.

127.    Defendants terminated DAI's employment because she engaged in the protected activity. The above-cited conduct of Defendants was done with malice, fraud, and oppression, and in reckless disregard for DAI rights under applicable wage laws. As a result, DAI suffered embarrassment, mental and emotional distress, and humiliation.

128.    DAI is thus entitled to recover punitive damages in an amount according to proof.

**COUNT 14 -UNFAIR COMPETITION UNDER CAL. UCL §§ 17200-17210**

129.    Plaintiffs re-allege and incorporate by reference the allegations in each and every paragraph hereinabove, as though fully set forth herein.

130.    California Business & Professional Code sections 17200-17210 (California's Unfair Competition Law ("UCL")) prohibit unlawful, unfair, or fraudulent business acts or practices.

131.    Defendants have committed, and upon information and belief continue to commit, on-

going unlawful, unfair, or fraudulent business practices within the meaning of the UCL, including, but not limited to:

a.  Failure to pay minimum and overtime compensation under California law;

b.  Failure to provide accurate and itemized wage statements required by under California law;

c.  Failure to pay shift break premiums;

d.  Failure to provide rest and meal breaks;

e.  Failure to pay wages due upon termination;

f.  Unlawful conversion of tips.

132. The unlawful, unfair or fraudulent business practice described above has proximately caused damages to Plaintiff and to the general public. California Business & Professional Code Section 17203 authorizes a court to fashion remedies necessary to prevent the use or employment by any person of any practice that constitutes unfair competition, or necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition.

133. Pursuant to the UCL, Plaintiffs are entitled to restitution of unpaid minimum and overtime compensation, rest and meal premiums, and converted tips.

134. Pursuant to the UCL, Plaintiffs are entitled to injunctive relief against Defendants' ongoing continuation of such ongoing unlawful, unfair, or fraudulent business practices.

## COUNT 15 –ACTIONS UNDER THE CALIFORNIA PRIVATE ATTORNEY GENERAL ACT OF 2004

135. Plaintiffs re-allege and incorporate by reference the allegations in each and every paragraph hereinabove, as though fully set forth hereto.

136. On November 15, 2023, pursuant to California Labor Code section 2699.3, Counsel for Plaintiffs served a notice on California Labor and Workforce Development Agency ("LWDA") and Defendants. Plaintiff, by virtue of the attached Exhibit "A," has satisfied all prerequisites to serve as a representative of the general public to enforce California's labor laws, including, without limitation, the penalty under California Labor Code section 2699.3 (a) (2) (C).

137. No notice of investigation has been received from the LWDA in the statutorily proscribed

1 65-day period since the mailing of the notice of the action and as a result, Plaintiff, as a representative of

2 the people of the State of California, seeks any and all penalties otherwise capable of being collected by

3 the LWDA and/or the Department of Labor Standards Enforcement ("DLSE").

4       138.     Pursuant to California Labor Code section 2699, the aggrieved employees are entitled to

5 be awarded twenty-five percent (25%) of all penalties due under California law, in addition to interest,

6 attorneys' fees, and costs. The Court should award seventy-five (75%) percent of the penalties due under

7 California law to the State of California.

8       139.     The specific code violations and civil penalties are listed as follows:

9       a. <u>FAILURE TO PROVIDE REST AND MEAL PERIODS</u>

10       140.     Rest periods are breaks taken at "the rate of ten (10) minutes net rest time per four (4) hours"

11 worked and must be "be counted as hours worked for which there shall be no deduction from wages." (Cal.

12 Code Regs., tit. 8, § 11050, subd. 12.)

13       141.     A "bona fide meal period" is a break that lasts at least 30 minutes, but no longer than 60

14 minutes, during which "the employee is relieved of all duty." (See Cal. Code Regs., tit. 8, § 11050, subd.

15 11; Div. of Labor Standards Enf't, Opinion Letter on Hours Worked: Split Shift (Dec.11, 2002).)

16       142.     Pursuant to California Labor Code section §§ 226.7 and IWC order 5-2001, rest periods

17 must be authorized and permitted at the rate of ten (10) minutes for every four (4) hours, and employers

18 must pay nonexempt employees an hour of pay at their regular rate for each workday that a rest period is

19 not provided; meal periods must be authorized and permitted at the rate of thirty (30) minutes for every

20 five (5) hours, and employers must pay nonexempt employees an hour of pay at their regular rate for each

21 workday that a rest period is not provided.

22       143.     The employees' work started at 11:00 a.m. and normally ended around 11:30 p.m., with a

23 two-hour hour shift break taking place around 2:30 p.m.-4:30 p.m. or 2:00 p.m.-4:00 p.m. The employees

24 worked at least nine and a half (9.5) hours per day, and the evening shift lasted more than five (5) hours.

25 Defendants failed to authorize and permit the employees to have rest periods of 10 minutes when the

26 employees worked over four (4) hours and meal periods of 30 minutes when the employees worked five

27 (5) hours, as they were required to remain on the premises and be on duty at all times, ready to serve

28 patrons who frequently arrived at varied odd hours.

---

1ST AMENDED COMPLAINT

144.    There is a civil penalty of $50 for each aggrieved employee per day period for each initial violation and $100 for each subsequent violation of IWC ORDER 5-2001, subd. 11 and 12 for failure to provide rest and meal breaks, pursuant to California Labor Code section 558.

b. <u>FAILURE TO PAY SPLIT SHIFT PREMIUM</u>

145.    Wage Order No. 5 defines a "split shift" as "a work schedule" that "is interrupted by non-paid non-working periods established by the employer, other than bona fide rest or meal breaks." (Cal. Code Regs., tit. 8, § 11050, subd. 2(R).) "When an employee works a split shift, one hour's pay at the minimum wage shall be paid in addition to the minimum wage for that workday, ...." (Cal. Code Regs., tit. 8, § 11050, subd. 4(C).)

146.    The interval period was not a "bona fide rest period," which by definition, was paid. In addition, because the interval period was longer than 60 minutes, it was not a "bona fide meal period."

147.    Full-time employees work both lunch and dinner shifts with a two-hour hour shift break taking place around 2:30 p.m.-4:30 p.m. or 2:00 p.m.-4:00 p.m. Defendants failed to compensate the employees (except for those compensated with a fixed monthly salaries) with one hour's pay at the minimum wage.

148.    There is a civil penalty of $50 for each aggrieved employee per day period for each initial violation and $100 for each subsequent violation of IWC ORDER 5-2001, subd. 4(C) for failure to pay split shift premiums, pursuant to Cal. Lab. Code § 558.

c. <u>FAILURE TO PAY OVERTIME COMPENSATION</u>

149.    Pursuant to California Labor Code section 510 and Industrial Welfare Commission ("thereafter "IWC") Order 5-2001 (Cal. Code Regs., tit. 8, § 11050, subd. 3), Defendants were required to pay Plaintiff for any work in excess of eight (8) hours in one workday and in excess of forty (40) hours in any one workweek at the rate of no less than one and one-half (1-1/2) times their regular rate of pay, and any work in excess of twelve (12) hours in one day and any work in excess of eight (8) hours on the seventh day of a workweek at the rate of no less than twice their regular rate of pay.

150.    California Labor Code section 515, subdivision (d) (1) provides: "[f]or the purpose of computing the overtime rate of compensation required to be paid to a nonexempt full-time salaried employee, the employee's regular hourly rate shall be1/40th of the employee's weekly salary."

151. California Labor Code section 515, subdivision (d) (2) provides: "[p]ayment of a fixed salary to a nonexempt employee shall be deemed to provide compensation only for the employee's regular, nonovertime hours, notwithstanding any private agreement to the contrary."

152. At all times relevant herein, full-time employees worked overtime. For example, DAI worked at least nine and a half (9.5) hours a day, 5 days a week. The cooks worked at least nine and a half (9.5) hours a day, five and a half (5.5) days a week.

153. Defendants paid fixed salaries to DAI and the cooks without compensating them for their overtime work hours. In addition, Defendants misclassified certain employees, such as DAI, as exempt.

154. Furthermore, Defendants permit, authorize, ratify, or even encourage the employees to use two social security numbers to fraudulently report wages so that Defendants evaded paying the employees overtime compensation and part of Defendants' federal and state taxes. As a result, Defendants generally underpaid the employees for their overtime work.

155. There is a civil penalty of $100 for each aggrieved employee per pay period for the initial violation and $200 for each subsequent violation of California Labor Code sections 1194, 510, and 515 regarding overtime violations, pursuant to California Labor Code section 558.

d. FAILURE TO PAY MINIMUM WAGE UNDER CAL. LAB. CODES

156. California Minimum Wage Order and California Labor Code section 1182.12 provide the state minimum wages: $15.50 in 2023, $14.00 in 2022, $13.00 in 2021, and $12.00 in 2020. The City of Mountain View Minimum Wage Ordinance provides the city minimum wages: $18.15 in 2023, $17.10 in 2022, $16.30 in 2021 and $16.05 in 2020.

157. The payment of a less amount than the minimum wage is unlawful under California Labor Code section 1197. Every employer shall pay each employee minimum wages for "all hours worked." (Cal. Code Regs., tit. 8, § 11050, subd. 4(A).)

158. Under California Labor Code section 515, subdivision (d) (2), when an employee works overtime and is not paid anything for that overtime (such as a non-exempt employee being paid a salary), that is a failure to pay the minimum wage for all hours worked. Thus, DAI and cooks were not compensated at all for the overtime hours.

159. There is a civil penalty for each underpaid employee for each pay period for which the

employee is underpaid minimum wages of $100 for an initial violation and of $250 for each subsequent violation of California Labor Code sections 1182.12, 1194, 1194.2, pursuant to California Labor Code section 1197.1.

e. CONVERSION OF TIPS

160.    Pursuant to California Labor Code section 351, every gratuity paid, given or left for an employee by a patron is the sole property of the employee or employees to whom it was paid, given, or left for, and therefore an employer or its agents are not permitted to share in any tips left for employees or make deductions from an employee's wages because of those tips.

161.    Pursuant to California Labor Code section 351, an employer who permits patrons to pay gratuities by credit card must pay employees the full amount of the gratuity that the patron indicated on the credit card slip, without any deductions for credit card payment processing fees or costs that may be charged to the employer by the credit card company.  Moreover, such gratuities must be paid to employees no later than the next regular payday following the date the patron authorized the credit card payment.

162.    Defendants required the waitstaff to contribute to a tip pool, and arbitrarily designed a numerical system to distribute tips. Defendants first allocate 3% of the tips to the corporation (for credit card payment processing fees as claimed by Defendants.) Then among the rest 97%, Defendant allocated 4% to the ushers, including Defendant Liu who considered her as such while overseeing the restaurant's operation, 20% to the kitchen staff, and 76% to the waitstaff (bussers would normally receive 50% of the tips that waiters and waitress do).

163.    Defendants violated California Labor Code § 351 by retaining part of the tips for the corporation (to cover credit card payment processing fees), by distributing part of the tips to the owner of the business, LIU, and by designing and implementing an arbitrary and capricious tip pooling and distributing system.

164.    There is a civil penalty of $100 for each aggrieved employee per pay period for the initial violation, and $200 for each subsequent violation of Cal. Lab. Code § 351 regarding conversion of tips, pursuant to California Labor Code section 2699(f)(2).


f. FAILURE TO FURNISH ACCURATE ITEMIZED WAGE STATEMENTS

165.     Pursuant to California Labor Code section 226, every employer shall, semimonthly or at the time of each payment of wages, furnish an employee with an accurate itemized statement in writing.

166.     Defendants failed to furnish the employees with accurate itemized wage statements by understating minimum wages, overtime compensations, split shift premiums, rest and meal break premiums, and tips, among other things. Thus, Defendants failed to report accurately the "gross wages earned," "net wages earned," "all deductions," all applicable hourly rate," and "total hours worked" within the meaning of subdivision (a) of California Labor Code section 226.

167.     Furthermore, Defendants permit, authorize, ratify, or even encourage the employees to use two social security numbers to fraudulently report wages so that Defendants evaded paying the employees' overtime compensation and evaded paying part of Defendants' federal and state taxes. As a result, the employees' itemized wage statements were generally inaccurate with respect to the "gross wages earned," "net wages earned," "all deductions," all applicable hourly rate," and "total hours worked" within the meaning of subdivision (a) of Cal. Lab. Code § 226.

168.     There is a civil penalty of $250 for each aggrieved employee for an initial violation and one thousand dollars ($1,000) for each subsequent wage statement violation, pursuant to California Labor Code section 226.3.

## PRAYER

WHEREFORE, Plaintiffs demands the following for their claims for relief:

1.  Failure to Pay Minimum Wages Under FLSA: DAI: Damages to be determined at the time of trial and in excess of $153, and liquidate damages in the same amount;

2.  Failure to Pay Overtime Compensation Under FLSA: DAI: Damages to be determined at the time of trial and in excess of $25, 588, and liquidate damages in the same amount; FELIPE: Damages to be determined at the time of trial and in excess of $38, 038, and liquidate damages in the same amount; ORTIZ: Damages to be determined at the time of trial and in excess of $30,800, and liquidate damages in the same amount

3.  Unlawful Retention of Tips Under FLSA: DAI: Damages to be determined at the time of trial and in excess of $33,921, and liquidated damages in the same amount; FELIPE: Damages to be determined at the time of trial and in excess of $16, 960, and liquidated damages in the same

amount; ORTIZ: Damages to be determined at the time of trial and in excess of $16, 960, and liquidated damages in the same amount; CALICIA: Damages to be determined at the time of trial and in excess of $2,863, and liquidated damages in the same amount;

4. Conversion of Tips Under California Law: DAI: Damages to be determined at the time of trial and in excess of $33,921, and exemplary damages be determined at the time of trial; FELIPE: Damages to be determined at the time of trial and in excess of $16, 960, and exemplary damages be determined at the time of trial; ORTIZ: Damages to be determined at the time of trial and in excess of $16, 960, and liquidated damages in the same amount; CALICIA: Damages to be determined at the time of trial and in excess of $2,863, and exemplary damages be determined at the time of trial;

5. Failure to Pay Overtime Compensation Under Cal. Lab. Code §§1194, 510, 515: DAI: Damages to be determined at the time of trial and in excess of $25, 588; FELIPE: Damages to be determined at the time of trial and in excess of $38, 038; ORTIZ: Damages to be determined at the time of trial and in excess of $30,800;

6. Failure to Pay Minimum Wage Under Cal. Lab. Code §§ 1182.12, 1194, 1194.2, 1197, Mountain View Minimum Wage Ordinance: DAI: Damages to be determined at the time of trial and in excess of $10,189, and liquidated damages in the same amount;

7. Failure to Provide Rest and Meal Periods Under Cal Lab. Code, §§ 226.7 and IWC ORDER 5-2001: DAI: Damages to be determined at the time of trial and in excess of $30,004; FELIPE: Damages to be determined at the time of trial and in excess of $35,112; ORTIZ: Damages to be determined at the time of trial and in excess of $36,960; FELIPE: Damages to be determined at the time of trial and in excess of $5,244.

8. Failure to Pay Split Shift Premiums: FELIPE: Damages to be determined at the time of trial and in excess of $369.60; ORTIZ: Damages to be determined at the time of trial and in excess of $369.60; CALICIA: Damages to be determined at the time of trial and in excess of $369.60.

9. Failure to Furnish Accurate Itemized Wage Statements Under Cal. Lab. Code §226: DAI: Damages to be determined at the time of trial and in excess of $4,000; FELIPE: Damages to be determined at the time of trial and in excess of $4,000; ORTIZ: Damages to be determined at the

time of trial and in excess of $4,000; CALICIA: Damages to be determined at the time of trial and in excess of $1,150.

10. Failure to Timely Pay Wages Due and Owning Upon Termination of Employment Under Cal. Lab. Code, §§ 201,202,203, 218.5: DAI: Damages to be determined at the time of trial and in excess of $6, 924; FELIPE: Damages to be determined at the time of trial and in excess of $4,560; ORTIZ: Damages to be determined at the time of trial and in excess of $4,800; CALICIA: Damages to be determined at the time of trial and in excess of $4,560.

11. Wrongful Termination in Violation of Public Policy (Tameny Claim): DAI: Damages to be determined at the time of trial and in excess of $90,000, and exemplary damages be determined at the time of trial; FELIPE: Damages to be determined at the time of trial and in excess of $78,052, and exemplary damages be determined at the time of trial; ORTIZ: Damages to be determined at the time of trial and in excess of $72,800; CALICIA: Damages to be determined at the time of trial and in excess of $78,052.

12. Retaliation Under Cal. Lab. Code, § 98.6: DAI: Damages to be determined at the time of trial and in excess of $90,000, and exemplary damages be determined at the time of trial;

13. Whistleblower Retaliation Under Cal. Lab. Code, § 1102.5: DAI: Damages to be determined at the time of trial and in excess of $90,000, and exemplary damages be determined at the time of trial;

14. Unfair Competition Under CAL. UCL §§ 17200-17210: Restitution and Permanent Injunction, pursuant to Cal. Bus. & Prof. Code § 17203.

15. Private Attorney General Act of 2004: Civil penalties to be determined at the time of trial and in excess of $820,400;

16. For each claim, a prejudgment interest;

17. For attorney's fees and costs;

18. For any such other and further relief as the Court may deem just and proper.

## **JURY DEMAND**

Plaintiffs hereby demand a trial by jury of all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

Dated:   May 14, 2024

X. Young Lai, Esq., Attorney for Plaintiffs

PROOF OF SERVICE

STATE OF CALIFORNIA, COUNTY OF SANTA CLARA

    I am employed in the County of Santa Clara, State of California.  I am over the age of 18 and not a party to the within action.  My business address is 111 N. Market Street, Suite 300, San Jose, CA 95113.

    On  5/14/2024    , I caused the foregoing document(s) described as PLAINTIFF' S MOTION FOR LEAVE TO FILE AMENDED COMPLAINT on all interested parties in this action by placing a true copy thereof enclosed in a sealed envelops addresses as stated on the attached service list:

[     ]    BY MAIL - I deposited such envelope in the mail at San Jose, California.  The envelope was mailed with postage thereon fully prepaid.  I am readily familiar with the firm's practice of collection and processing correspondence for mailing.  Under the practice I would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at San Jose, California in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one (1) day after date of deposit for mailing in affidavit.

[     ]    BY PERSONAL SERVICE  - I caused such envelope to be delivered by a process server employed by [Name of process server] .

[**X**     ] BY ELETRONIC TRANSMISSION - I transmitted a PDF version of this document by electronic mail to the party(s) identified on the attached service list using the email address(es) indicated.

[       ]    BY OVERNIGHT DELIVERY – I deposited such envelope for collection and delivery by USPS with delivery fees paid or provided for in accordance with ordinary practices.  I am readily familiar with the firm's practice of collection and processing packages for overnight delivery by USPS for receipt on the same day in the ordinary course of business.

[     ]    (State) I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

[**X**     ]    (Federal) I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.


DATED: 5/14/2024                LAW OFFICES OF X. YOUNG LAI


By:_____

          X. Young Lai, Attorney for Plaintiff

SERVICE LIST

SUSAN E. BISHOP, IRIS C. CHIU
BERLINER COHEN, LLP
TEN ALMADEN BOULEVARD
ELEVENTH FLOOR
SAN JOSE, CALIFORNIA 95113-2233
susan.bishop@berliner.com
iris.chiu@berliner.com